# THE ST. LOUIS, ALTON & TERRE HAUTE RAILROAD COMPANY

## v.

## AMERICA CARR, ADMINISTRATRIX.

*Railroads — Negligence — Personal Injury — Intoxicated Passenger—*
*Knowledge of Condition by Servants of Company—Station Agent—*
*Newsboy.*

1. If servants of a railroad company knew that a passenger on one of its trains was in a state of unconsciousness, through intoxication, and knew that while in that condition he was sitting on the rear steps of the last car of said train while the same was in motion, and permitted him to remain there, whereby he fell off and was killed, the company is liable in damages.

2. The law does not, however, as a rule, impose the duty on railroad companies to protect their passengers, while on their trains, from the passenger's own negligence. Their duty is to furnish a safe and convenient mode of transportation, of which the passenger is to avail himself, and then safely, in that mode, to transport him. They do not have to watch the doors or windows to prevent passengers from jumping or falling off their trains.

3. If a passenger voluntarily becomes intoxicated, the law does not

impose the duty on the common carrier to place a guard over such passenger to prevent him from injuring himself, or placing himself in a place of danger.

4. In the case presented, this court holds that no evidence was introduced to show negligence on the part of any agent of the company, which would create a liability or uphold the judgment in plaintiff's favor.

[Opinion filed March 11, 1893.]

APPEAL from the Circuit Court of Franklin County; the Hon. JOSEPH P. ROBARTS, Judge, presiding.

Messrs. F. M. YOUNGBLOOD and W. S. CANTRELL, for appellant.

Mr. C. H. LAYMAN, for appellee.

MR. JUSTICE SAMPLE. This suit was brought by appellee to recover damages for the death of her intestate caused, as alleged, by the negligence of the appellant.

The case was tried before the judge of the court without a jury and judgment rendered in favor of appellee in the sum of $5,000, and a motion made for a new trial was overruled. The principal error assigned and discussed is that the evidence does not support the judgment. The declaration in substance charges, that on the 4th day of June, 1890, the appellant was possessed of and operating a certain railroad, extending from Du Quoin, in Perry County, and thence in an east and southeast direction through the County of Franklin, to Eldorado, in Saline County, with locomotive, engine and cars, run and operated thereon by steam power for the transportation of passengers, etc. That the deceased in his lifetime, at Du Quoin, on the 4th day of June, 1890, became and was a passenger on appellant's railroad to be by it for certain fees and reward, then and there paid it by deceased, safely carried from Du Quoin to Benton, on its said railroad. That it thereupon became the duty of appellant to so safely carry deceased from Du Quoin to Benton, and use all due care and caution for his safety and protection. It further charges that appellant

did not so safely carry the deceased and did not use all due care and caution for his safety and protection, but on the contrary the defendant then and there knowing the fact that said deceased, while on its said cars as such passenger, was intoxicated and unaware of the dangerous and perilous situation he was in, knowingly and negligently permitted deceased to sit and remain sitting for the space of one half hour in a state of unconscious intoxication on the steps of the rear end of the rear car of said train while the same was being run at a great rate of speed, and that while the deceased was so sitting, the defendant knowing the fact that he was intoxicated and unconscious of his danger, and in consequence of his so sitting and remaining in such hazardous situation with the knowledge of defendant, and in consequence of the great rate of speed with which said train was being operated at a point one half mile east of Mulkeytown station, on said railroad, the deceased was then and there suddenly and violently thrown from said train down to and upon the ground, in consequence of which fall his skull was fractured and crushed, and he was instantly killed.

The defendant filed the plea "not guilty," upon which issue was joined. A stipulation was filed agreeing that all evidence in the case should be heard under the general issue the same as if properly or specially pleaded. No question arises on the introduction or rejection of evidence, and the primary question before this court is, whether there is sufficient evidence in the record to sustain the finding of the court below on the question of negligence. The evidence discloses the following facts: That the deceased, William Carr, on the 4th day of June, 1890, purchased a ticket for transportation from Du Quoin to Benton, over appellant's road; that he boarded a freight train at Du Quoin about 11 A. M. on that day, which train had attached one passenger car and a "combination car" for passengers, mail, baggage, and express, the latter being the rear car. The seats in the "combination car" were at the front end, as the car was then attached to the train, with a partition between

them and that portion of the car used for other purposes. Entrance to the rear platform was obtained by opening a door in said partition, then follow an alley-way on the south side of said car.

The deceased was somewhat under the influence of liquor when he got on the train at Du Quoin, although there is no evidence to show that any one connected with the railroad company knew that fact at that time. He took a seat near the rear of the passenger apartment of the combination car. The conductor took up his ticket about three miles out from Du Quoin, when Carr laughingly remarked to the conductor, "Say, Barney, I want to get off at Buckner." The conductor says from this remark he surmised that he was intoxicated. There were two brakemen with the train, one looking after the front portion and the other the rear portion of the train. The front brakeman did not know Carr, as that was his first trip over that portion of the road. He saw Carr at Du Quoin on the station platform, but did not see him thereafter so far as disclosed by this record. The rear brakeman knew Carr, and first recognized him when near Mulkeytown, the first station east of Du Quoin. Carr was then, as this witness testified, not very drunk nor very sober. When the train whistled, Carr and another man got up, but as this witness had to attend to his duties, he did not notice whether they went out or not. When the train arrived at Mulkeytown, one witness, who was standing with, or near several other persons, who testified about the same fact, says he saw Carr sitting on the steps of the rear platform of the combination car. The other witnesses, several of them, among others, the station agent, testify that they saw him sitting there as the train passed the depot platform as it pulled out for the next station. All these witnesses thought Carr was intoxicated, although Carr did not move or speak. He sat with his elbows on his knees with his head resting in his hands.

The newsboy got on the train as it pulled out, where Carr was sitting, and he was told by one or more of the bystanders, as the train was moving out, to take Carr in, or

he might fall off; the agent spoke to the newsboy to that effect. It further appears that none of the trainmen heard this request, and none of them saw Carr on the rear steps of the rear car. If further appears that none of the train men saw Carr after the time above mentioned, when they respectively state they saw him on the train east of Du Quoin, and between that station and Mulkeytown. The body of Carr was found about one-half mile east of Mulkeytown, where he had evidently fallen from the train. The evidence shows that the newsboy shook Carr, and told him to get inside, and then passed in himself, without noticing whether Carr came in or not, and did not tell the conductor, or either of the brakemen, about Carr or his situation. It further appears that, after the train left Mulkeytown, the conductor went through the train, to collect fare, and, as he says, went through to the rear end of the combination car and that no one was then on the rear platform, or steps; he did not think of Carr, and did not know he was not on the train until after it had passed a station called Christopher, when, remembering the remark that Carr wanted to get off at Buckner, he missed him, and then supposed he had got off at some other station. It also appears that the station agent at Mulkeytown did not signal the train to stop after he saw where Carr was, though he says he could have done so.

There is no witness who testified to the extent of Carr's intoxication, except to say that they thought he was drunk from his appearance as he sat on the rear platform, other than the train men, and one man who saw him on the train and before he got on. While at Mulkeytown he did not speak to any one or move. The witness who testified to seeing him before he got on the train at Du Quoin said he was drunk, but could walk. There is no evidence to show that he was assisted on the train or while in the train, or that he staggered in walking. Apparently, he had command of himself.

It is believed that the foregoing statement contains a full and fair summary of the evidence. It will be observed

that the declaration bases the right of recovery on the alleged fact that Carr was in a state of unconsciousness from intoxication, and that appellant knowingly and negligently permitted him to remain on the rear steps of said coach in a place of danger unknown to him but to appellant, whereby he was killed. There is no claim that Carr was in the exercise of any care for himself. That is sought to be excused by the averment of his condition. It is undoubtedly the law that if the appellant knew Carr, while on its train as a passenger, was in the condition averred, and knew that he, while in that condition, was on the rear steps of said car while the train was in motion, and permitted him to remain there, from which he fell and was killed, it would be liable in this action under such a state of facts; the element of care would not necessarily be involved, as, to knowingly permit a passenger to remain on the train at such a place, with a knowledge of such a state of intoxication, would be gross negligence, amounting to a reckless disregard of human life.

This statement is made on the theory that a railroad company receives a passenger, knowing his condition is such as that averred, or afterward knew such condition, and knows the peril in which such passenger places himself, and knowingly allows him to so remain. It may, however, be stated as a rule that the law does not impose the duty on railroad companies to protect their passengers while on their trains from the passengers' own negligence. Their duty is to furnish a safe and convenient mode of transportation, of which the passenger is to avail himself, and then to safely in that mode transport him. They do not have to watch either the doors or windows to prevent passengers from jumping or falling off the train.

If a passenger voluntarily becomes intoxicated, the law does not impose the duty on the common carrier to place a guard over such passenger to prevent him from injuring himself, or placing himself in a place of danger. If a passenger, however, while in such condition as averred, does place himself in a place of peril, then before the company

can be held liable if an injury results therefrom it must be proven that the agents or servants operating the train knew that fact—not that they should have known it because of any duty by law imposed on the company to watch such passenger—but the actual fact of such perilous position must be brought home to the knowledge of the servants operating such train. The company was not bound to have its servants at the rear platform of the coach on which Carr was sitting at Mulkeytown, for the reason that it owed him no such duty, as he had not indicated any intention of alighting there, and in fact he did not intend to do so. Neither did it owe him any duty to learn or find out where he was on the train. As has heretofore been stated, it is not claimed that there is any evidence to show that any of the men operating the train actually knew or had any reason for believing that Carr was on the platform of the coach from which he fell. The only notice that the appellant had of it was through the station agent at Mulkeytown. He saw Carr on the rear platform as the train pulled past the station. He had no other notice of Carr's condition than that derived from that cursory observation. No one at the station actually knew his condition; there is no evidence to show that Carr spoke or moved or was leaning up against the car for support. The evidence of all the witnesses who saw Carr at Mulkeytown was to the effect that he was supporting his head in his hands with his elbows resting on his knees—not the position for a man who was helpless or in a state of unconsciousness from intoxication. The condition of Carr, so far as the agent could have known it at that time, and his relation to the operation of the train, did not so imperatively require him to take charge of or stop the train until Carr could be removed, that if he did not do so the company would be liable. The agent did not, and could not have known at the time, that Carr was in that unconscious state from intoxication averred in the declaration, and he had no opportunity to learn such fact. We do not find from the evidence that the fact of such condition, if it did exist, was brought to the knowledge of any of the agents of the ap-

pellant conducting the train. It is not claimed that the newsboy was the agent of the appellant. He was engaged in a private enterprise, as much so as an expressman, and no more closely related to the operation of the train or the transaction of the business of the appellant than the mail agent. Had he been the agent of the appellant then it would have been his duty to have investigated and learned the true condition of Carr after having found him on the rear steps of the coach platform, and if he was so drunk as averred, to have taken him inside or taken some measures to have secured his safety.

The court below expressly held that there was no evidence to show negligence on the part of the men operating the train, with which holding we agree, and go further, and hold that there is no evidence to show negligence on the part of any agent of the appellant which would create a liability, or uphold the judgment rendered in this case. The judgment is therefore reversed and remanded.

*Reversed and remanded.*