## GAUKLER v. DETROIT, GRAND HAVEN & MILWAUKEE RAILWAY CO.

1. NEGLIGENCE—QUESTION FOR JURY.

The conductor and trainmen testified that plaintiff was put off the train at a junction. Of plaintiff's witnesses, one testified that he was put off at the first stop, which would ordinarily be the junction; another thought he was put off at the first stop, but, as he saw no light, thought it could not be the junction; two others said that a passenger was put off at a street corner some blocks this side of the junction, and that he came and talked with them, and that within a few days they heard of plaintiff's being hurt at that street corner. *Held*, that the place where plaintiff was put off the train was a question of fact for the jury.

2. SAME—LEAVING PASSENGER IN PLACE OF DANGER.

Where a passenger, after being put off a train, goes to a place 25 feet from the tracks, in a public and well-frequented street in a city, the question of the fitness of the place where the train stopped is immaterial.

3. SAME—DRUNKEN PASSENGER.

A railroad company is not guilty of negligence in ejecting a passenger from its train, and leaving him 25 feet from its track, in a public street, in the presence of two police officers, although he was somewhat intoxicated, and afterwards went upon the track and was injured.[1]

Error to Oakland; Smith, J. Submitted February 21, 1902. (Docket No. 52.) Decided June 3, 1902.

Case by Philip Gaukler, an insane person, by Henry Gaukler, his guardian, against the Detroit, Grand Haven & Milwaukee Railway Company, to recover damages for his negligent ejection from defendant's train. From a judgment for plaintiff, defendant brings error. Reversed.

[1] For exposure of drunken passenger to danger by ejection from car, see note to *Roseman* v. *Railroad Co.*, (N. C.) 19 L. R. A. 327.

*E. W. Meddaugh* (*Geer & Williams*, of counsel), for appellant.

*Lillis & Beardslee*, for appellee.

HOOKER, C. J.   The plaintiff entered defendant's train at Detroit.   The first stop regularly made upon this road is at a junction with the Lake Shore road some distance from the starting point, but within the city.   Some blocks before reaching the junction, the road crosses Farnsworth street.   Demand was made upon plaintiff for his fare, which he refused to pay, and when the train made its first stop (according to the testimony of the witnesses upon the train) he was told by the conductor that he must get off. He had not yet sat down in the car, according to some of the testimony, and he walked to the door, down the steps, and alighted without assistance.   He was left upon the ground, the conductor staying with him until the train passed, when he mounted the rear platform.   The conductor and trainmen say that this occurred at the Lake Shore junction, and the only testimony said to show the contrary from witnesses on the train is that of two of plaintiff's witnesses,—DeConick, who said he did not know where it was, but that it was at the first stop; and Adcock, who testified that he thought he was put off at the first stop; that he knew the train stopped at Lake Shore junction, but did not think plaintiff was put off there, because he saw no lights where he was put off. Two other witnesses testified to seeing a passenger train stop about 50 feet north of Farnsworth street, where a man was put off.   The witnesses stood on Farnsworth street, and one or both of them stated that the rear end of the train passed them about the time the man got to them as they stood near the flagman's house on Farnsworth street.   He came up to them as they stood by the shanty, 25 or more feet east of the track, and one said that he asked the way downtown, and both stated that he was told to come with them, and they would put him on a car going downtown.   This he did not seem inclined to do,

and he was left standing by the shanty. They agree that it was about 9 p. m. One of them said that he read the next morning of an accident at Farnsworth street corner to a man named Gaukler. The other heard of it two or three days after seeing the man. One was a constable and the other a deputy sheriff. Both said the man was drunk, and agreed that they did not see anything to indicate that he could not take care of himself. We think this testimony was sufficient to make the place where plaintiff was put off a disputed question, and therefore we must assume that the plaintiff's claim that he was put off at Farnsworth street was accepted by the jury.

The next person who saw this man was the engineer of another train. He was walking between two tracks on the railroad right of way, and was struck by the engine as it passed by him, and injured. This was 100 or 200 feet from where he alighted from the train, and south of Farnsworth street. The negligence complained of is— *First*, leaving him in a place of danger; *second*, abandoning him to look out for himself at a time when he was incapable of doing so by reason of his intoxication.

The testimony of these two officers is all that shows that the man was put off near Farnsworth street, instead of at the Lake Shore junction, and they agree that he left the track, and went with them to the flagman's shanty, 25 or 30 feet east of the tracks. We may treat the case, then, as though he had been left at that point, and taken 25 or 30 feet from the tracks, in a public and well-frequented street in the city, and left in the presence of two citizens, and the question of the fitness of the place where the train stopped is eliminated. In this respect the case is like that of *Hamilton* v. *Railroad Co.*, 183 Pa. St. 638 (38 Atl. 1085), where one walked back to a station after being carried by, and was there injured. The court said it was as though he had gotten off at the station.

Plaintiff's counsel insist that it must be left to the jury to say how drunk the man was, and whether, under the

circumstances, it was negligence to put him off. We should add to that, "And leave him 25 feet east from the tracks on a public highway, in the presence of two officers, who were conservators of the peace." The evidence in this case is practically undisputed. Every witness who testified said that the man could walk and could talk. He knew that fare was required of him, and he insisted that the conductor should carry him for the same fare that the electric line charged; and, when he was informed that he could not do so, he refused to pay more, and at once acquiesced in the conductor's demand that he leave the train. He alighted unaided. He then left the track to go to Detroit, found some citizens and inquired the way, but declined to go with them. All knew that he had been drinking,—perhaps considered him drunk,—but the testimony of no one indicates that he was unable to care for himself. All, from the saloon keeper—who testified that he was in the habit of keeping track of his patrons' trains, that they might not miss them, so that they might freely drink all that they were disposed to buy, and who obligingly assisted them to their respective trains—to the last man to talk to him, agree that he was able to care for himself, though drunk. There is nothing on this record to make it incumbent on this conductor to do more than to see that this man, in his apparent condition, left the railway premises, and was talking with citizens 25 feet away from a point of danger. If there was any negligence at any stage of the proceeding,—which we do not intend to intimate,—it ceased as a factor in this case when the plaintiff left the premises and reached a place of safety.

It is unnecessary to cite and discuss the numerous cases which counsel have cited in their briefs. Each rests upon its own facts, as this one must do; and the rule that, wherever a claim of negligence is made, the case must be given to a jury, though the undispted facts conclusively show an absence of negligence, does not obtain in this

State, as numerous decisions show.  A verdict for defendant should have been directed.

The judgment is reversed, and a new trial ordered.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., did not sit.