GWYN v. CINCINNATI, N. O. & T. P. R. CO.

(Circuit Court of Appeals, Sixth Circuit. June 14, 1907.)

No. 1,638.

CARRIERS—PUTTING PASSENGER OFF AT DANGEROUS PLACE—PROXIMATE CAUSE OF DEATH.

Plaintiff's intestate was riding on defendant's railroad on a through ticket, which entitled him to transportation to a junction with the next connecting road. The train on which he took passage did not stop at the junction, but stopped at a station four miles north, to which the train of the connecting road also ran over defendant's track to make connection with it. Deceased was advised of such fact, and told to get off at such station, which he did, but for some unexplained reason got back on the same train and started southward. He was soon discovered by the conductor, who put him off a half mile south of the station and told him that if he would hasten back he could still catch his connecting train, which would soon follow. The place at which he was put off was between two tunnels, and he walked back through the north one, and while talking with a man whom he met his train left the station, which was in sight and only a short distance away. He then turned southward again, walked through the first tunnel, and entered the second, which was 1,600 feet

long, curving, very dark and narrow, and while in such tunnel was struck by a train and so injured that he soon died. There was no material evidence to show how he came to be struck. *Held* that, conceding that deceased was put off at a dangerous place between the two tunnels, he had passed such danger and reached a place of safety, and the proximate cause of his death was, not such negligence of the conductor, but his own voluntary act in turning back, for which defendant could not be held liable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, § 1245.]

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

A. G. Foster, the plaintiff's intestate, was run over and killed by a railway train operated by the servants of the defendant in error. The accident took place in a long, narrow, and dark tunnel, being tunnel No. 26, between Oakdale and Harriman Junction, Tenn. The deceased bought a ticket at Charleston, W. Va., from the Chesapeake & Ohio Railway Company, for Knoxville, Tenn.; one coupon calling for a passage over the Chesapeake & Ohio Railway Company to Lexington, Ky., another for a passage over the lines of the defendant railway company from Lexington to Harriman Junction, Tenn., and a third for a passage over the Southern Railway from Harriman to Knoxville. Harriman was the junction point of the railroads; but by arrangement the latter ran its trains over the rails of the first-named company to Oakdale, four miles north of Harriman, for the purpose of there exchanging passengers. One of defendant's daily passenger trains did not stop at Harriman at all, while the other did. The deceased, by mistake, took that train at Lexington which did not stop at Harriman. He was advised of this, and told to get off at Oakdale, where he could take a Southern train which would take him to Knoxville upon the coupon which called for that city. On reaching Oakdale deceased got off according to instructions given him; but instead of waiting for and taking the Southern train, which he had been told would follow defendant's train out of Oakdale, he for some unexplained reason got back upon defendant's train. He was discovered very shortly after leaving Oakdale, and told that he was on the wrong train, and that he could, by hurrying, get back to the platform and catch the Knoxville train before it should pull out. The train was at once stopped, and deceased put off at a point just about one-half mile south of the Oakdale platform, and at a point on defendant's line between two tunnels, one known as "Tunnel No. 25" and the other as "No. 26." Tunnel No. 25 is a straight tunnel, about 200 feet in length, and open and light enough to see through. Its southern portal was some 200 feet north of the point where deceased left the train, and its northern portal is 1,200 to 1,500 feet from the Oakdale station. Tunnel No. 26 began about 1,000 feet south of the point of ejection, and was some 1,600 feet long, curving, and very dark and narrow. Deceased started to walk back to Oakdale. He reached and safely passed through tunnel No. 25, and reached a point some 200 or 300 feet north of its northern portal, and was in plain sight of the Oakdale station, where the train he wanted was standing. There he met a Mr. Case, who lived at Oakdale, and stopped and had some conversation with him. While talking to Case he wanted to catch his train, as he observed to be moving, and Case told him he had missed his train. He then made some inquiries about trains out of Oakdale and Harriman, and hotels at each point. He was also told that it was about four miles to Harriman, and that Harriman was in just the opposite direction to Oakdale. Deceased then turned back and started down the track toward Harriman. While going through tunnel No. 26 he was struck and sustained injuries from which he soon died. There was no evidence, of material character, to show how he came to be struck. The tunnel is so dark and low and curving that smoke accumulates ahead of an engine going south in such a way as to prevent a headlight penetrating the darkness more than a few feet. There was evidence of compliance with the provisions of the Tennessee statute, in respect to the precautions to be observed in running trains, by the only two trains which could possibly have collided with him. Foster alighted from defendant's

train about 4:15 o'clock p. m. and was found in tunnel No. 26 between 4:30 o'clock and 5 the same afternoon; the day being December 7th. At the close of all of the evidence, the jury was instructed to find for the defendant.

Jerome Templeton, for plaintiff in error.
T. A. Wright and Edward Colston, for defendant in error.
Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

After making the foregoing statement of the facts, the opinion of the court was delivered by LURTON, Circuit Judge.

It cannot be said that there was not evidence from which the jury might have found that the deceased was put off at a dangerous place, from which he could not reach a place of safety without some risk. Neither was the evidence all one way as to whether he got off voluntarily or not at that place. In view of this state of the evidence, the trial judge announced that upon the matter of negligence there was a question for the jury, and based his instructions to find for the defendant in error wholly upon the ground that any negligence in putting him off when and where it did was not, as matter of law, the proximate cause of his death. In this conclusion we concur. The deceased wished to connect with a train which would carry him to Knoxville. There is no disputing the fact that he knew he had to make his connection at Oakdale, and that the train he had taken would not stop at Harriman Junction. He got off at Oakdale to do this thing. For some unexplained reason he got back upon the train he alighted from. Possibly this was due to some confusion of mind, for he was awakened from sleep to get off there. However, the fact is that after being fully advised he got off at Oakdale and then got back on again. The conductor discovered him very soon after leaving Oakdale, and told him plainly he had time, if he would hurry, to get back to the platform and catch the train, which would in ten minutes follow his own train.

Now, assuming that he did not of choice alight at this place because it gave him a good chance to get back and catch the right train, but that he left only because the conductor put him off as a passenger upon a wrong train, it is not deniable that he was put off with the direction and in the reasonable expectation that he would go back to Oakdale, and that, if he did not delay, he would catch his train and retrieve his mistake. Contrary to his own expressed purpose and to the explicit direction of the railway conductor as to the direction he should take to extricate himself from the place, he dallied along until the train he was intent on catching had pulled out. If he had then gone to Oakdale, he would have there found that there was no passenger train, from either Oakdale or Harriman Junction, by which he might go to Knoxville, until morning. But if he preferred to stay at Harriman Junction, though it was a place without accommodations, in order to take a chance of getting into Knoxville on a freight train, he would have found at Oakdale that an accommodation train would leave for Harriman within a few minutes. But, losing his chance to catch the train he should have taken, he turned his back upon Oakdale, its hotel and station being in full sight, and set off to walk down the track to Harriman Junction, four miles away. This he doubtless did

upon some notion that he might have there a chance for a train to Knoxville which he would not have at Oakdale. Possibly he did this upon advice or information from Case. But Case was a stranger to the defendant in error, though he had once been in their employment. When he made this change in his plans, deceased had then extricated himself from any particular dangers incident to the place of his ejection from the train, and might have made his way safely to Oakdale in ample time to have taken the local train for Harriman, if, for any reason, he should prefer to go there.

The only legal liability of the defendant company in this action is for damages resulting from being put off of its train at a dangerous place. But when he changed his purpose of going to Oakdale he had extricated himself from that dangerous place and was that moment as safe as if he had there been put off. Being in plain sight of the Oakdale station and the principal Oakdale hotel, and very near to paths alongside of the tracks which would have led him safely to the railway station, he turned his back upon Oakdale, returned to the alleged dangerous place from which he had made his way, and then, in the face of the ominous appearance and warning notices at the portal of tunnel No. 26, undertook to go through that gloomy passage under the mountain. This voluntary return to the dangerous place from which he had safely escaped, and his voluntary effort to go through tunnel No. 26, whether superinduced by information from Case or not, is of no legal importance, as Case was a stranger, was an act of folly which could not have been reasonably anticipated, and was itself an intervening and proximate cause of his death which ensued. A wrongdoer is responsible for the results which should be anticipated as the natural consequences of the wrong, but not for those which ensue from some line of conduct by the injured person, or unforeseen consequences which might not be reasonably anticipated. The relation of the defendant's original negligence to the collision which occurred in tunnel No. 26 was too remote to be regarded as the proximate cause of his death. Milwaukee R. R. Co. v. Kellogg, 94 U. S. 469, 475, 24 L. Ed. 256; Scheffer v. Railroad Co., 105 U. S. 249, 26 L. Ed. 1070; Butts v. Cleveland, C., C. & St. L. R. R. Co., 110 Fed. 329, 330, 49 C. C. A. 69; Jarnagin v. Travelers' Protective Ass'n, 133 Fed. 892, 895, 66 C. C. A. 622, 68 L. R. A. 499; Jackson v. Railroad Co., 13 Lea (Tenn.) 491, 49 Am. Rep. 663; Railroad v. Fleming, 14 Lea (Tenn.) 128; Hamilton v. Railroad Co., 183 Pa. 638, 38 Atl. 1085; Gaukler v. Detroit Ry. Co., 130 Mich. 666, 90 N. W. 660.

The case of Washington, etc., Street Ry. Co. v. Hickey, 166 U. S. 521, 17 Sup. Ct. 661, 41 L. Ed. 1101, has been cited and pressed upon us as if it established some new rule in respect to what constitutes a proximate cause of negligence. This is a misapprehension of the case. In that case counsel sought to separate the cause of the accident into two distinct causes, one of which they claimed was remote and the other proximate. The court, upon the peculiar facts of the case, said:

"The two so-called negligent acts were in fact united in producing the result, and they made one cause of concurring negligence on the part of both companies. They were in point of time substantially simultaneous acts and parts of one whole transaction, and it would be improper to attempt a separation in the manner asked for by the counsel for the horse car company."

Counsel have suggested that there might be a liability for the action of the signal man at the tower, between the two tunnels, in permitting north-bound trains to enter tunnel No. 26 while the deceased was in that tunnel. The pleadings raise no such question, nor does the evidence show the signal man to have had any knowledge of deceased's presence in the tunnel when he signaled trains bound north that the track was clear.

Judgment affirmed.