[No. 8401.   Department One.   December 18, 1909.]

## ANNA SULLIVAN BENNETT et al., *Respondents*, v. SEATTLE ELECTRIC COMPANY, *Appellant*.[1]

APPEAL—DECISION—LAW OF CASE.   A decision on a former appeal that certain evidence raised a mixed question of law and fact is conclusive on a second appeal.

APPEAL—REVIEW—VERDICT.   A verdict on conflicting evidence will not be set aside on appeal although a different conclusion would have been reached by the appellate court.

CARRIERS—DRUNKEN PASSENGER—CONTRIBUTORY NEGLIGENCE.   A carrier having accepted a passenger who was unable to care for himself by reason of intoxication, his duty to care for his own safety should be measured by his condition as to sobriety, as a corollary of the rule that the company owed him a duty commensurate with his condition (CHADWICK and MORRIS, JJ., dissenting).

WITNESSES—REPUTATION—APPEAL—HARMLESS ERROR.   It is not prejudicial error to allow a witness to preface his testimony with the statement that he was a deputy county assessor, in that good reputation cannot be shown until the same is attacked, as it only incidentally touched his reputation.

TRIAL—MISCONDUCT OF COUNSEL—APPEAL—HARMLESS ERROR.   It is not ground for reversal that on examining a photograph, counsel made a statement outside of the record that "timbers have been put on since."

CARRIERS — NEGLIGENCE — SETTING DOWN PASSENGERS — INSTRUCTIONS.   In an action for negligence of a carrier in putting off an intoxicated passenger at a dangerous place, it is applicable and proper to instruct that the carrier owed to its passengers the highest degree of care and prudence practicably consistent with the operation of its road and letting them on and off its cars.

COSTS—ATTORNEY'S FEES.   Upon the second successful jury trial of a case, after a reversal on appeal, the plaintiff is entitled to tax but one statutory attorney's fee, under Bal. Code, § 5172, which has reference only to the final judgment in the case.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered March 12, 1909, upon the verdict of a jury rendered in favor of the plaintiffs, in an action

[1] Reported in 105 Pac. 825.

for the death of a passenger permitted to alight from a street car at a dangerous place while in an intoxicated condition. Modified.

*James B. Howe* and *A. J. Falknor*, for appellant.

*John E. Humphries* and *George B. Cole*, for respondent.

Gose, J.—This action, instituted by the widow and minor children of David Sullivan, deceased, to recover damages for his death, which it is alleged was caused by the negligence of the appellant, terminated in a verdict and judgment for the plaintiffs, from which the defendant prosecutes this appeal.

During the pendency of the case the widow remarried. The case has been before this court on two former appeals, where a full statement of the facts will be found. *Sullivan v. Seattle Elec. Co.*, 44 Wash. 53, 86 Pac. 786; *Id.*, 51 Wash. 71, 97 Pac. 1109. In brief, the charge of negligence is that David Sullivan, in the nighttime, and when in a drunken and helpless physical condition, entered upon one of the street cars of the appellant, it being a common carrier of passengers, as a passenger, and paid his fare; that his condition was known to the appellant; that when the car was on the trestle work and bridge along the shore of Lake Union, the night being dark and there being no sufficient lights and at a dangerous place, as the appellant well knew, it negligently allowed him to alight from the car upon the trestle work and bridge, there being no guards or rails at that place, and that he fell through the trestle work into the water of the lake and was immediately drowned.

On the first appeal we stated the rule to be "that a carrier owes to the passenger a duty commensurate with his condition," and that after it receives a passenger who is helpless or incapacitated, it must exercise toward him that degree of care necessary to keep him from harm." On the second appeal we thus defined the issues:

"The issues in this case are, first, was the deceased intoxicated; second, did the servants of the appellant have

actual notice of his condition; third, was the place where the deceased was permitted to alight from the car a reasonably safe place to land a person in his condition; and fourth, was the act of the appellant or its servants in suffering and permitting the deceased to leave the car at that particular time and place and in his then condition the natural and proximate cause of his death. If the jury should find all of these issues in favor of the respondents they would be entitled to a verdict, and the mere fact that the deceased fell into the lake from the platform or trestle by reason of his intoxication—if he did so fall—would not of itself preclude a recovery, as the appellant was bound to anticipate such negligence on his part."

The evidence tends to show, that the deceased was received as a passenger on one of the appellant's cars when in such a state of intoxication as to be incapable of taking care of himself; that he was permitted to alight, either upon the trestle along the shore of Lake Union, upon a dark night, where there were no guards or barriers, or at a point a few feet distant upon the platform at Hinckley station, where there were no guards or barriers where the car entered or left the platform; that the water at that point was about twenty-six feet deep, and about five days later his body was taken out of the lake at a point a few feet from the south entrance of the car line to the platform; that the car upon which he was riding was traveling toward the north, and that his death was caused by drowning. Numerous errors are assigned, but most of the questions sought to be raised were decided adversely to the appellant on the former appeals.

It is first urged that the respondents were not entitled to recover, for the reasons (1) that it was not shown that the place where deceased got off the car was not a reasonably safe place for one in his condition to alight, (2) that he was guilty of contributory negligence, and (3) that it is impossible to determine from the evidence the actual cause of his death. These questions were raised, first, by a motion

for a directed verdict, and, second, by a motion for a judgment *non obstante.* That these were questions of mixed law and fact was settled in the former appeals.

There was, as we have seen, evidence tending to show that the place where the deceased got off was not a reasonably safe place for a drunken man to alight. We cannot usurp the functions of the jury and say that the preponderance of the evidence was against their conclusion. Had the writer been a juror he would have reached a conclusion different from that found by the jury on that question, but that does not authorize us to overrule their verdict. The jury is the tribunal designated by the constitution to try such questions, and when their verdict is based upon competent testimony, and is free from passion and prejudice, the court will not overrule their determination upon a pure question of fact. The evidence is conclusive that the deceased came to his death by drowning. No bruises were found upon the body. It was taken out of the water within a few feet of the place at which at least two of the witnesses testified he alighted from the car, and within a few feet of the south side of the platform. There is no evidence that he was ever seen alive after the car left the platform. The law has taken human life upon less evidence of the *corpus delicti.* On the first appeal we said that the appellant owed the deceased a duty commensurate with his condition. The corollary of this rule must be that his duty to care for his own safety should be measured by his condition as to sobriety. *Price v. St. Louis etc. R. Co.,* 75 Ark. 479, 88 S. W. 575, 112 Am. St. 79. As we shall see, the jury were properly instructed upon the question of his negligence.

A witness for the respondent was permitted to premise his testimony with the statement that he was a county assessor at the time of the accident, which he later corrected by saying that he was then a deputy assessor. This is assigned as error, on the ground that evidence of the good reputation of a witness cannot be given until his reputation has been as-

sailed. We think the objection is without merit. The question was the usual one in the introduction of a witness to the jury. It only incidentally touched his reputation. It is true, as argued by the appellant, that evidence as to the good reputation of a witness cannot be given until his reputation has been attacked. But the evidence to which the objection is raised does not fall within the rule. Rules of evidence are to be applied, not to thwart, but to aid in, the administration of justice.

While a witness was examining a photograph of Hinckley station, counsel for appellant stated, "These timbers have been put on since." This is urged as error. It frequently happens in the trial of a cause that counsel will make some remark not strictly within the record. If all such cases were reversed, finality in a lawsuit would be more of a hope than a reality. We must credit the jury with the possession of common sense and assume, when questions like this are raised, that they distinguished between the sworn testimony of the witness and the casual remark of counsel.

The court instructed the jury as follows:

"A common carrier of passengers is required under the law to exercise towards its passengers the highest degree of care and prudence practicably consistent with the operation of its road in the carrying of persons and in letting them on and off its cars."

It is urged that this instruction was inapplicable to the issues, and hence erroneous. There was no error in the instruction.

Error is assigned in the refusal of the court to give certain proposed instructions. In so far as they correctly stated the law as announced in the former appeals, they were given in substance but in a somewhat different phraseology. The court in effect instructed the jury that the appellant was not required to receive a drunken passenger when unattended, but that if it did receive the deceased in a drunken condition, and had actual knowledge that he was so intoxicated as to

be incapable of taking care of himself, it was required to exercise towards him care commensurate with his condition; that the mere happening of an accident does not raise the presumption of negligence; that the appellant was not an insurer of the safety of its passengers; that when one becomes a passenger upon a car of a common carrier of passengers, he continues to be a passenger until such time as he has safely alighted from the car in a reasonably safe place; that the appellant could not lawfully put the deceased off the car or permit him to get off at a place where there was danger of his perishing or coming to harm, even though such place would be reasonably safe for one in a normal condition; that if the jury should find from the evidence that the deceased was in such a state of intoxication that it was dangerous to let him off the car at the station known as Hinckley station, or upon the trestle along the shore of the lake, and the appellant knew that it was unsafe for him to be let off the car, where the jury should find from the evidence he was let off, then it would be guilty of negligence; and that if the jury further found that by reason of such negligence the deceased fell into the water of the lake and was drowned, the respondent would be entitled to a verdict, unless the deceased failed to exercise that degree of care for his own safety which a person in his then condition would ordinarily use under like circumstances. The court then summarized the issues by reading from this case, *Sullivan v. Seattle Elec. Co., supra,* the language we have quoted.

It is finally contended that the court erred in entering judgment for two statutory attorney's fees of $15 each. Our code, Bal. Code, § 5172, provides that "when allowed to either party costs to be called the attorney's fee shall be as follows: . . . In all actions where judgment is rendered after impaneling a jury, $15." The statute has reference to the judgment which finally determines the cause, and it seems clear that but one attorney's fee can be taxed as costs regardless of the number of trials. The respondents have cited

*Williams v. Morrison*, 32 Fed. 682, as supporting their right to have two attorney's fees taxed as costs. In that case the court construed § 824 of the U. S. Revised Statutes, which allows a docket fee as costs "on a trial before a jury"; whilst as we have seen, our statute only authorizes the fee "where a judgment is rendered." In an action at law the court can impose no costs by way of attorney's fees except such as are expressly authorized by statute. *Larson v. Winder*, 14 Wash. 647, 45 Pac. 315.

The case will be remanded with directions to the trial court to modify the judgment to the extent of allowing but one statutory attorney's fee as costs. In all other respects the judgment will be affirmed. Neither party will recover costs.

RUDKIN, C. J., and FULLERTON, J., concur.

CHADWICK, J. (concurring)—I concur in the conclusion reached by Judge Gose, but not with that assurance I would wish to feel in passing upon a matter so important. I am moved to this determination solely upon the ground that the judgment of the trial court results from a proper application of the rules of law twice determined by this court to be the law of the case. Were it an original question, I would not be willing to apply the broad doctrine that, when a carrier receives a drunken passenger, it owes to him a duty commensurate with the degree of his intoxication, without some material qualifications. Sullivan entered appellant's car in a crowded city street where, as is well known, a company cannot select its passengers with any great degree of care. Although a carrier may surrender or waive its own rights, that rule affords no warrant for saying that it should or could waive the rights of other passengers who cannot stop their ears to the profane babble of a drunken man. Applied without qualification, the law of this case would impose a duty of carrying a drunken, profane passenger along with sensitive, refined people to a place of absolute safety, without regard to his usual stopping place, for although that be opposite his own home, it may be in a degree dangerous.

There were a large number of passengers on the car at the time Sullivan got aboard. So far as the record shows, they were ladies and gentlemen returning home from the peaceful engagements of the day. When Sullivan entered the car, he provoked an altercation with the conductor, and from that time until he got off indulged in loud, boisterous, profane, and obscene language. If the company was at fault, its greater offense was against the decent, law-abiding passengers under its care (to whom it owed at least an equal duty) in that it did not immediately put the offending passenger off the car, instead of endeavoring to pacify him while carrying him to an established station, where of his own choice and unassisted he left the car. The company performed its full duty to Sullivan, and should not be held liable if he wandered back on the track and was drowned. Hutchinson, Carriers, 994, and cases cited. It is no answer to this argument to say that the platform was open at both ends. It was necessary that it should be so for the cars to pass. Car tracks cannot be laid either upon land or over water without some attending dangers to the public.

Having said what in my judgment the law of the case should be, I now abide by, and subscribe to, the law of this case as previously declared by the court, for the interests of society demand that there be an end to this litigation.

MORRIS, J., concurs with CHADWICK, J.