[No. 12869.    Department One.    May 20, 1916.]

JOHN WELSH, *Respondent*, v. SPOKANE & INLAND EMPIRE RAILROAD COMPANY, *Appellant*.[1]

CARRIERS—PASSENGERS—SETTING DOWN PASSENGERS — INTERURBAN CARS. The rule applicable to street cars that the relation ordinarily terminates when the passenger gains a secure footing upon the street, applies to one alighting from an interurban train.

SAME—SETTING DOWN PASSENGERS—NEGLIGENCE—EVIDENCE—SUFFICIENCY. Negligence is not shown in allowing an intoxicated passenger to alight unattended from an interurban car, with many other passengers, on a safe unobstructed city street, whereupon he leaned against the car with his foot on the rail and was injured when the train moved, where there was no evidence that he staggered or required special attention when leaving the car, or that any one knew of his dangerous position, although it was known that he was intoxicated when he boarded the train; since actual knowledge of his incapacity was lacking, and he was discharged at a safe place, without any knowledge of his dangerous position.

Appeal from an order of the superior court for Spokane county, Webster, J., entered December 1, 1914, granting a new trial, after the verdict of a jury rendered in favor of the defendant by direction of the court, in an action for personal injuries. Reversed.

*Graves, Kizer & Graves*, for appellant.

*Samuel T. Crane* and *John Salisbury*, for respondent.

ELLIS, J.—Action to recover damages for personal injuries. The material facts are as follows: On October 5th, 6th and 7th, plaintiff was at St. Maries, Idaho, where he indulged freely in intoxicating liquor during the 6th and up until two o'clock in the afternoon of the 7th, when he boarded a boat for Coeur d'Alene. He had no liquor with him nor procured any while aboard the boat. Arriving at Coeur d'Alene, he started for the depot. Not knowing where it was, he inquired of a man on the street, who volunteered

[1]Reported in 157 Pac. 679.

to show him.  At the depot, he purchased a ticket for Spokane and checked his baggage.  His train not having arrived, he and the new acquaintance went across the street where he had two or three drinks.  After that they returned to the sidewalk to await the train.  He remembers he knew when it arrived, that he staggered, and that his new friend and one of the train crew assisted him into the car, the latter remarking that he was "pretty full."  Plaintiff slept throughout the journey from Coeur d'Alene to Spokane.  He had no liquor after leaving Coeur d'Alene.

Apparently, after the train had come to a stop at Main and Stevens streets, in Spokane, a trainman awakened him and informed him of the arrival.  He was sober enough to know that the passengers were getting off the car and that there were quite a number of them.  He also knew and remembered that he occupied the second seat in the front car and that he followed the other passengers from the car. After stepping to the street, he seems to have turned and leaned against the car, with his face to the car and his right foot on the track immediately in front of a truck.  He knows he did not stand that way very long, and thought all the passengers got off the train.  He testified that he knew what was going on and that he could walk and talk at the time. The train was started and ran over his right foot, throwing him to the ground and crushing and bruising all the toes and a portion of the foot above the toes.  He was immediately taken to the emergency hospital and all of the toes except the great toe on his right foot were amputated.  The surgeon who operated, and his assistant, both testified that plaintiff was intoxicated when brought into the hospital, that he could not talk, that he staggered, that he did not seem to feel the pain and required no anaesthetic during the operation.

At the close of the testimony, the defendant moved for a directed verdict.  The motion was granted and the jury was discharged.  Plaintiff then moved for a new trial.  This mo-

tion was likewise granted.   From the order granting a new trial, defendant appeals.

Appellant contends that respondent's evidence was insufficient to make a *prima facie* case, and that the granting of the motion for a new trial was therefore error.   The order granting a new trial was based upon the express ground that, under the circumstances, defendant owed plaintiff the duty of using a degree of care commensurate with his condition, and that, in view of that condition, the relation of passenger and carrier had not terminated at the time of the injury, and that the case should have been submitted to the jury.   The car on which respondent was a passenger was one of an electric interurban train.   The rule applicable to street cars governs in determining when the relation of carrier and passenger ends as to one alighting in a street from an interurban train.   In the absence of any unusual inherent danger, defect or obstruction in the place of alighting, that relation ceases upon the alighting passenger gaining a secure and maintainable footing upon the street.   Nellis, Street Surface Railroads, page 449; *Gannaway v. Puget Sound Traction, Light & Power Co.*, 77 Wash. 655, 138 Pac. 267.   Clearly, unless continued by respondent's intoxication, the relation of carrier and passenger had ceased at the time of the injury.

It is argued, however, that respondent's condition was such as to impose on the carrier the duty of extraordinary care for his safety, even after the relation of carrier and passenger otherwise would have ceased.   Respondent cites, and mainly relies upon, the case of *Sullivan v. Seattle Elec. Co.*, three times appealed to this court and reported in 44 Wash. 53, 86 Pac. 786; 51 Wash. 71, 97 Pac. 1109, 130 Am. St. 1082, and *Bennett v. Seattle Elec. Co.*, 56 Wash. 407, 105 Pac. 825.   That case, however, is readily distinguishable upon the facts.   Deceased was visibly crazed with drink and was plainly incapacitated by his intoxication. That condition continued up to the very time when he was finally permitted to alight alone on a platform partially un-

guarded, over the waters of a lake some twenty-six feet deep, and near ten o'clock on an extremely dark night. The defendant's servants had actual knowledge of his helpless condition up to the very time of his leaving the car, and of the dangers of the locality. The question whether the place was reasonably safe for discharging a passenger in his known condition was held one for the jury. True, on the first appeal, this court said:

"The rule is that a carrier owes to a passenger a duty commensurate with his condition. After it receives a passenger who is helpless or incapacitated it must exercise towards him that degree of care necessary to keep him from harm. A carrier is not obligated to receive a helpless, imbecile, or drunken person as a passenger, when unattended, but if it does so receive such a one, it must give him such care as will insure him a safe passage to some proper designation. It cannot lawfully put him off, or permit him to get off, at a place where there is danger of his perishing or coming to harm, even though such a place would be reasonably safe for one in a normal condition. In this case whether the carrier exercised this degree of care towards the deceased was a question for the jury, and the court erred in taking it from them."

But that is far from saying that there would be any negligence in allowing even a drunken man to alight at his destination, with many other passengers, on a safe and unobstructed city street. The language above quoted was used in the light of the facts there involved. With full knowledge of the man's condition and of the dangers of the locality, the conductor ought to have anticipated the very accident which happened. At any rate, the question of negligence was one for the jury. The distinction which we have marked is made clear in the opinion on the second appeal of the *Sullivan* case, reversing a judgment for plaintiffs because of an instruction to the effect that, if defendant's servants knew of Sullivan's helpless condition,

"or by the exercise of reasonable care, that is, such care as a reasonably prudent person, engaged in like occupation

would ordinarily exercise under similar circumstances to ascertain the condition of a passenger, should have known that he was in such an intoxicated condition as to be unable to care for himself,"

then it was their duty to take such precautions for his safety as required by surrounding circumstances. We said:

"This instruction is erroneous. A conductor has a right to presume that every passenger entering his car is both sane and sober until he has actual notice to the contrary. He is not compelled to make a mental or physical examination to ascertain his condition, and the doctrine of imputed or implied notice has no application to such a case."

We then quoted with approval the following:

"If a passenger voluntarily becomes intoxicated, the law does not impose the duty on the common carrier to place a guard over such passenger to prevent him from injuring himself in a place of danger. If a passenger, however, while in such condition as averred, does place himself in a place of peril, then before the company can be held liable if an injury results therefrom it must be proven that the agents or servants operating the train knew that fact—not that they should have known it because of any duty by law imposed on the company to watch such passenger—but the actual fact of such perilous position must be brought home to the knowledge of the servants operating such train. The company was not bound to have its servants at the rear platform of the coach on which Carr was sitting at Mulkeytown for the reason that it owed him no such duty, as he had not indicated any intention of alighting there, and in fact he did not intend to do so." *St. Louis etc. R. Co. v. Carr*, 47 Ill. App. 353.

"We think, however, if a passenger is in need of special assistance, either from sickness or other misfortune, and this fact is known to the employees of the carrier, it is their duty to render it; but they are not required to anticipate such wants or needs. The trial court therefore erred by inserting into the instructions given to the jury the idea that it was incumbent upon the employees of the appellant to observe the condition of the passengers in order to see whether or not they needed assistance. This thought is embraced in the use of the expression 'or was apparent' in the instructions after

stating the duty of the employees of appellant if appellee's health was known to them. As said before, if the employees of the railroad knew that the appellee was in feeble health, and needed assistance, it was their duty to render her such reasonable help as lay in their power in order that she might alight from the car in safety. But they owed her no duty of observation to ascertain her condition, and therefore the expression 'or was apparent' should have been omitted." *Illinois Cent. R. Co. v. Cruse*, 29 Ky. Law. 914, 96 S. W. 821.

In the case before us, the only evidence of notice of respondent's condition on the part of appellant was that he staggered when he boarded the car at Coeur d'Alene, Idaho, and that he was aided by one of the train men, who remarked that he was pretty full. There is no evidence that he staggered or in any manner evinced a state of intoxication, when leaving the car at Spokane. In the absence of such evidence, there was no duty upon appellant's servants to make a physical or mental examination to ascertain his capacity, nor to place a guard over him to prevent him from going into a place of danger after he had safely left the car. So far as the record shows, he then gave no evidence showing need of special attention. His condition at that time is best shown by his own testimony. He knew where he was. He knew that it was the place at which he intended to alight. He knew that many other passengers were leaving the car at that place. He knew exactly what he was doing. He knew just where he sat in the car. He knew that he walked down the steps of the car and that he turned and leaned against the car. He detailed his exact position at the time of the accident. There is no evidence whatever that any of appellant's employees knew that he had placed himself in this dangerous position, nor evidence of anything in his carriage or conduct in leaving the car to cause them to anticipate such an act. Under such circumstances, they had done their whole duty when they discharged him safely at a safe place. As said by this court in the third appeal of the *Sullivan* case, *Bennett v. Seattle Elec. Co.*, 56 Wash. 407, 105 Pac. 825:

"When one becomes a passenger upon a car of a common carrier of passengers, he continues to be a passenger until such time as he has safely alighted from the car in a reasonably safe place."

The converse is certainly true, in the absence of actual knowledge on the carrier's part that the passenger is at the time incapable of taking care of himself.  3 Thompson, Negligence, § 2935; *Illinois Cent. R. Co. v. Cruse*, 123 Ky. 463, 96 S. W. 821, 8 L. R. A. (N. S.) 299; *Raben v. Central Iowa R. Co.*, 74 Iowa 732, 34 N. W. 621.

"A man cannot voluntarily place himself in a condition whereby he loses such control of his brain or muscles as a man of ordinary prudence and caution in the full possession of his faculties would exercise, and by such loss of control contribute to an injury to himself, and then require of one ignorant of his condition recompense therefor."  *Strand v. Chicago & W. M. R. Co.*, 67 Mich. 380, 34 N. W. 712.

See, also, *Burleson v. Morrisville Lumber & Power Co.*, 86 Vt. 492, 86 Atl. 745; *Little Rock R. & Elec. Co. v. Billings*, 173 Fed. 903; *Johnson v. Louisville & N. R. Co.*, 104 Ala. 241, 16 South. 75, 53 Am. St. 39; 3 Hutchinson, Carriers (3d ed.), § 1230; *Conrad v. Graham & Co.*, 54 Wash. 641, 103 Pac. 1122, 132 Am. St. 1137; *Herrick v. Washington Water Power Co.*, 75 Wash. 149, 134 Pac. 934, 48 L. R. A. (N. S.) 640; *Knapp v. Northern Pac. R. Co.*, 56 Wash. 662, 106 Pac. 190.

Though appellant had notice that respondent was to some extent intoxicated when he boarded the car at Coeur d'Alene, Idaho, he was safely landed in the street in Spokane, a place, so far as the record shows, perfectly safe for a man in his apparent condition.

"Where the carrier has done his full duty in respect of the removal of a drunken passenger from the train, he will not be liable because the passenger afterwards wanders back upon the track and is struck and injured by a passing train."  2 Hutchinson, Carriers (3d ed.), § 994.

In *Gaukler v. Detroit, G. H. & M. R. Co.*, 130 Mich. 666, 90 N. W. 660, on a state of facts much similar to those here presented, the court held that it was not incumbent on carriers' servants "to do more than to see that the man, in his apparent condition, left the railway premises," and that "if there was any negligence at any stage of the proceeding . . . it ceased as a factor in this case when the plaintiff left the premises and reached a place of safety," and that a verdict should have been directed.

See, also, *McClelland v. Louisville, N. A. & C. R. Co.*, 94 Ind. 276; *Nash v. Southern R. Co.*, 136 Ala. 177, 33 South. 932, 96 Am. St. 19.

It must be borne in mind that, in order to fix liability upon the carrier in such a case as this, actual knowledge of the incapacity of the passenger to care for himself must be shown. "The doctrine of imputed or implied notice has no application to such a case." Such knowledge was not shown. Moreover, he was, in any event, discharged at a perfectly safe place in company with many other passengers. Under these circumstances, there was no duty upon appellant to further guard him, in the absence of knowledge that he had placed himself in a dangerous position. Of such knowledge, there is no evidence. The fact that it subsequently developed that he was grossly drunk does not supply the essentials of knowledge on the carrier's part. The trial court properly granted the nonsuit. It follows that the order granting a new trial was error.

Order reversed, and cause remanded for dismissal.

MORRIS, C. J., MOUNT, CHADWICK, and FULLERTON, JJ., concur.