[No. 6102. Decided September 25, 1906.]

ANNA SULLIVAN *et al.*, *Appellants*, v. THE SEATTLE ELECTRIC COMPANY, *Respondent.*[1]

TRIAL—INSTRUCTIONS—ASSUMPTION OF ISSUE—ARGUMENTATIVE AND COMPLICATED. It is not error to refuse requested instructions of extreme length assuming in some places the issue in controversy, as proved, in other respects argumentative, and as a whole complicated and involved.

CARRIERS—NEGLIGENCE—DUTY TO INTOXICATED PERSON—INSTRUCTION. In an action to recover damages from a street car company for the death of a passenger resulting from alleged negligence in permitting the deceased, while intoxicated, to alight at an unsafe place, it is error to instruct the jury to the effect that the carrier owed no

[1]Reported in 86 Pac. 786.

greater care to an intoxicated person than to one in a normal condition, if he knew where he wanted to get off and was able to do so without assistance, and unless he was "absolutely helpless"; since the rule is that the carrier owes to a passenger a duty commensurate with his condition, and it was for the jury to determine whether due care was exercised under all the circumstances.

APPEAL—REVIEW—PARTY ENTITLED TO ALLEGE ERROR. The question of the insufficiency of the plaintiff's evidence, cannot be reviewed at the instance of the defendant, on an appeal by the plaintiffs, in whose favor ruling thereon was made below.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered March 7, 1906, upon the verdict of a jury rendered in favor of the defendant, in an action against a street railway company for the death of a passenger permitted to alight from a car at a dangerous place while in an intoxicated condition. Reversed.

*John E. Humphries* and *George B. Cole*, for appellants, to the point that a carrier must exercise toward an intoxicated person a degree of care commensurate with his condition, cited: *Atchison etc. R. Co. v. Weber*, 33 Kan. 543, 6 Pac. 877; *Fogg's Adm'r. v. Louisville etc. R. Co.*, 23 Ky. Law 383, 63 S. W. 580; *Haug v. Great Northern R. Co.*, 8 N. D. 23, 77 N. W. 97, 73 Am. St. 727, 42 L. R. A. 664; *Wheeler v. Grand Trunk R. Co.*, 70 N. H. 607, 50 Atl. 103, 54 L. R. A. 955; *Short v. Spokane*, 41 Wash. 257, 83 Pac. 183; *Dean v. Oregon R. & Nav. Co.*, 38 Wash. 565, 80 Pac. 842; *Price v. St. Louis etc. R. Co.*, 75 Ark. 479, 88 S. W. 575, 112 Am. St. 79; *Conolly v. Crescent City R. Co.*, 41 La. Ann. 57, 5 South. 259, 6 South. 526; *Atchison etc. R. Co. v. Parry*, 67 Kan. 515, 73 Pac. 105; *Seaboard etc. R. Co. v. Joyner's Adm'r*, 92 Va. 354, 23 S. E. 773; *Louisville etc. R. Co. v. Johnson*, 108 Ala. 62, 19 South. 51, 31 L. R. A. 372; *Burke v. Chicago etc. R. Co.*, 108 Ill. App. 565; *Illinois Cent. R. Co. v. Smith*, 85 Miss. 349, 37 South. 643, 107 Am. St. 345, 70 L. R. A. 642; *Baker v. Wilmington etc. R. Co.*, 118 N. C. 1015, 24 S. E. 415; *St. Louis etc. R. Co. v. Parks*

(Tex. Civ. App.), 90 S. W. 343. Contributory negligence will not avail if the defendant, by the exercise of reasonable care, could have avoided the accident. *Kingston v. Ft. Wayne etc. R. Co.*, 112 Mich. 40, 70 N. W. 315, 74 N. W. 230, 40 L. R. A. 131; *Price v. St. Louis etc. R. Co.*, 75 Ark. 479, 88 S. W. 575, 112 Am. St. 79; *Dean v. Oregon R. & Nav. Co.*, 38 Wash. 565, 80 Pac. 842; *Inland & Seaboard Coasting Co. v. Tolson*, 139 U. S. 551, 11 Sup. Ct. 653, 35 L. Ed. 270; *Grand Trunk R. Co. v. Ives*, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; *St. Louis etc. R. Co. v. Parks*, and *Louisville etc. R. Co. v. Johnson, supra; Johnson v. Louisville etc. R. Co.*, 104 Ala. 241, 16 South. 75, 53 Am. St. 39; *Louisville etc. R. Co. v. Gatewood*, 14 Ky. Law 108; *Louisville etc. R. Co. v. Ellis' Adm'r*, 97 Ky. 330, 30 S. W. 979. In the absence of direct testimony to prove suicide or illegal death, natural or accidental causes will be presumed. *Landon v. Preferred Accident Ins. Co.*, 43 App. Div. 487, 60 N. Y. S. 188; *Hancock Mutual Life Ins. Co. v. Moore*, 34 Mich. 41; *Chicago etc. R. Co. v. Vandenberg*, 164 Ind. 470, 73 N. E. 990; *Knights Templar etc. Ind. Co. v. Crayton*, 209 Ill. 550, 70 N. E. 1066; *Kelley v. Hannibal etc. R. Co.*, 70 Mo. 604; *Brotherton v. Manhattan Beach Imp. Co.*, 48 Neb. 563, 67 N. W. 479, 58 Am. St. 709, 33 L. R. A. 598; *Potter v. New York Cent. R. Co.*, 19 N. Y. S. 862; *United States Brewing Co. v. Stoltenberg*, 211 Ill. 531, 71 N. E. 1081; *Southern R. Co. v. Webb*, 116 Ga. 152, 42 S. E. 395; *Supreme Tent etc. v. Stensland*, 206 Ill. 124, 68 N. E. 1089, 99 Am. St. 137.

*Hughes, McMicken, Dovell & Ramsey*, for respondent, contending, *inter alia*, that the jury was not entitled to speculate as to the manner of decedent's death, cited: *Armstrong v. Cosmopolis*, 32 Wash. 110, 72 Pac. 1038; *Reidhead v. Skagit County*, 33 Wash. 174, 73 Pac. 1118; *Patton v. Texas etc. R. Co.*, 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361; *Morrison v. Phillips etc. Construction Co.*, 44 Wis. 405; *Asbach v. Chicago etc. R. Co.*, 74 Iowa 248, 37 N. W. 182;

*Taylor v. Yonkers*, 105 N. Y. 202, 11 N. E. 642; *Philadelphia etc. R. Co. v. Schertle*, 97 Pa. St. 450; *Tyndale v. Old Colony R. Co.*, 156 Mass. 503, 31 N. E. 655; *Hughes v. Cincinnati etc. R. Co.*, 91 Ky. 526, 16 S. W. 275; *Fritz v. Salt Lake etc. Light Co.*, 18 Utah 493, 56 Pac. 90; *Corcoran v. Boston etc. R. Co.*, 133 Mass. 507.

FULLERTON, J.—This action was brought to recover damages for the death of David Sullivan, who was the husband of the appellant Anna Sullivan, and father of the minor appellants. The death occurred by drowning, caused, it is alleged, by the negligence of the respondent.

The respondent operates street car lines in the city of Seattle, and suburban lines from that city to the neighboring towns. One of such lines extends from the city of Seattle in a northerly direction to Fremont. This line passes along the west edge of Lake Union, being constructed on an open trestle over the waters of the lake. The line where it crosses the lake is double tracked, the track to the east being used for cars outward bound from the city of Seattle, and the one to the west for those returning. Immediately to the west of the car line and separated from it by a railway, is a planked roadway known as the "Boulevard." At intervals along its car line where it parallels this roadway, the respondent has constructed platforms or stations opening into the roadway for the convenience of its passenger service. One of such stations, called Hinckley station, is constructed about midway of the lake. This station has an opening into the street of fifty feet in width, and is planked for the same width across the double tracks of the car line to some six or eight feet beyond, a distance from the roadway of some forty feet. It is surrounded, except where the car tracks enter and leave it, with a substantial railing.

On the evening of November 19, 1904, shortly before 10 o'clock, Mr. Sullivan boarded one of the respondent's cars in

the city of Seattle at the junction of Seventh and Stewart streets, presumably to go to his home which was in Fremont. It is agreed by both sides that he was under the influence of liquor at the time, although the degree of his intoxication is a subject of controversy in the evidence. Mr. Sullivan first manifested his condition by insisting he had not received change for the coin he had tendered for his fare. After being appeased as to this, he remembered some duty he had not performed in the city of Seattle, and insisted on being let off the car, going so far as to give the emergency signal bringing the car to a full stop at once. The car stopped after it had entered on the Lake Union trestle, and the conductor deeming it unsafe in his condition to let him off at that place forcibly restrained him from leaving the car. This act of the conductor seemingly enraged Sullivan, and he expressed his feelings in vile and abusive language, refusing to cease even at the command of the conductor. The conductor finally told him he could get off at Hinckley station, and when the car reached that place he was permitted to alight on the side of the car opposite the roadway, that being the usual place for passengers to alight who get off of outward bound cars. Certain witnesses who were on the car testify that Mr. Sullivan walked in the direction of the roadway as the car started on its way. This is the last time he was seen alive. Some five days later his body was found in the waters of the lake directly below the south edge of the platform where it joins onto the planked roadway.

The negligence of the respondent, according to the contention of the appellants, consisted in permitting Sullivan to get off its car at Hinckley station, which place, they allege, was a dangerous place for one in his condition. The case was tried on this theory, and resulted in a verdict for the respondent. This appeal is from the judgment entered on the verdict.

The errors assigned relate to the refusal to give certain instructions requested by the appellants, and to the giving of certain others on the court's own motion. The instructions requested were ten in number and cover some fourteen pages of typewritten matter. But, without setting them out at length, their mere perusal shows that the court did not err in refusing to give them. Were they otherwise unobjectionable, their extreme length would alone justify the refusal to give them. But we think they were erroneous in other respects. In many places they assume as proved the very issue in controversy; in others they are argumentative, and as a whole so complicated and involved as to require as much elucidation as the facts of the case themselves. The giving of such instructions does not tend to enlighten the jury. The ordinary jury is composed of plain men, unfamiliar even with the language of the law, and to them an instruction is meaningless unless it be stated in plain and simple language, and be a clear, accurate, and concise statement of the law applicable to the facts of the case. No error was committed therefore in refusing to give the requested instructions.

The instructions given and excepted to are the following:

"The gist of this action is based upon the assumption that the deceased, David Sullivan, was in such a condition that he was helpless. I instruct you, in that respect, that if you find that the deceased, David Sullivan, was in such a condition of mind as to know that he wanted to get off at a certain stopping place of the defendant, and requested the defendant to let him off there, and that he was in such condition physically to get off the car, then it was the duty of the defendant to let him off at that place, and if the defendant let him off at that place, and the place was a reasonably safe place for the discharge of passengers, then the defendant performed its full duty to the deceased. If, however, you find that the deceased was in such a condition of intoxication that he was helpless, physically and mentally,

or either—absolutely helpless, then it would be the duty of the carrier to look after him, and if they let him off at that place, take some precautions to protect him, or carry him to some other place which would be safe and where it would be a proper place to put him off. It is not the duty of the common carrier to convey a drunken passenger around on its cars until he sobers up enough to—so that he becomes sober enough to discharge him without any danger to himself.

"If you find from the evidence that the deceased, David Sullivan, was in such a condition, mentally and physically, as to be unable to care for himself, and the defendant let him off in a place where it was reasonable to suspect that it was not ordinarily safe, and it was reasonable to suspect that he might come to harm, then the defendant would be responsible for that act, provided that the deceased's own act did not contribute to the accident.

"The defense of contributory negligence is pleaded here, and the burden of proving contributory negligence is upon the defendant. I charge you that the mere fact of becoming intoxicated would not in itself constitute contributory negligence. It is the duty of a common carrier, so long as they carry a passenger in an intoxicated condition, to carry him as safely as any other passenger—if they know, to exercise greater care— A Juror: Explain that to us again. The Court: I say the fact of becoming intoxicated in itself does not constitute contributory negligence; that is, you cannot excuse any negligence on the part of the deceased after the time of his becoming intoxicated. If he was guilty of a negligent act after alighting from the car, the fact of his being intoxicated would not excuse that negligent act, because an act is an act of negligence irrespective of whether the person that makes it is intoxicated or not intoxicated; that is, an act which would be negligent—in a sober man would be equally an act of negligence on the part of an intoxicated man.

"If you find from the evidence that the deceased was in such a state of mind and body as to know that he wanted to get off said street car at this station and requested to be put off at that station and was able of his own free will

and without assistance to get off at that station, then I would instruct you that he was not in such a helpless condition as to make it negligence on the part of the defendant to let him off at that place. If, however, they permitted—put him off, or permitted him to get off, at a place that was dangerous to an ordinarily prudent man, then the company—the defendant would be responsible if anything happened to him by reason of their putting him off in an unsafe place.

"If you find that the deceased, David Sullivan, was negligent, and his own negligence contributed to his death, then the plaintiffs cannot recover in this case; but it is not proper for you to indulge in any speculations as to the degree of negligence chargeable to the company or chargeable to the deceased. If the deceased was guilty of any negligence which materially contributed to his death, the plaintiffs cannot recover, although you may find that the defendant may have been guilty of negligence which contributed to his death.

"There are no degrees of negligence recognized under the laws of this state. Negligence on the part of the deceased, which contributed to his injury—to his death, would bar the plaintiffs from recovering, although you might find that the defendant was also negligent. A Juror: The point I wanted to get at is, would a man that was able to cross the street— a man that was able to walk from the sidewalk and get onto a street car, is he in a helpless condition? The Court: I instruct you that a man that was capable of doing that and was capable to know where he wanted to go and where he wanted to get off, would not be in a helpless condition."

Of these instructions we think the appellants justly complain. The court instructed the jury in effect, it will be noticed, that if the deceased was in such a condition of mind as to know that he wanted to get off at a particular place, and was physically able to get on and off the car, he was not in such a condition as to make it necessary for the respondent to exercise any greater degree of care towards him than it is required to exercise towards its normal passengers; that it is only when the passenger is "absolutely helpless" that the carrier owes a duty to look after him. But manifestly these cannot be absolute tests. Common ex-

perience tells us that a man may know where he wishes to go, and be able to get on and off a street car without assistance, yet be so far incapacitated by intoxicants that it would be highly dangerous to him to leave him in an exposed and dangerous situation. No hard and fast rule can be laid down as to such cases. And it was for the jury in this case to determine from the entire evidence showing the defendant's condition, whether it was negligence to leave him at the place he was left by the respondents. The court drew the lines too narrowly. He should not have made absolute helplessness the sole test.

The instructions are faulty also in that they assume that acts which would be negligence if committed by sober persons are also negligence when committed by an intoxicated one. If this assumption were correct, then the carrier would owe no greater duty to an intoxicated passenger than it owes to a sober one. Any place that it could lawfully put off a sober passenger without liability it could also put off a drunken one. But all of the authorities are against this view. The rule is that a carrier owes to a passenger a duty commensurate with his condition. After it receives a passenger who is helpless or incapacitated it must exercise towards him that degree of care necessary to keep him from harm. A carrier is not obligated to receive a helpless, imbecile, or drunken person as a passenger, when unattended, but if it does so receive such a one, it must give him such care as will insure him a safe passage to some proper designation. It cannot lawfully put him off, or permit him to get off, at a place where there is danger of his perishing or coming to harm, even though such a place would be reasonably safe for one in a normal condition. In this case whether the carrier exercised this degree of care towards the deceased was a question for the jury, and the court erred in taking it from them.

The respondent contends that, notwithstanding there may be error in the instructions, the case must nevertheless be

affirmed, because the evidence was insufficient to make a case for the jury. But, under the uniform holdings of this court, this question cannot be reviewed on an appeal by the party in whose favor the ruling was made. *Gray v. Washington Water Power Co.*, 27 Wash. 713, 68 Pac. 360; *Id.*, 30 Wash. 154, 70 Pac. 255.

For errors in the instructions complained of, the cause is reversed and a new trial awarded.

HADLEY, RUDKIN, and CROW, JJ., concur.