[No. 7593.   Decided November 14, 1908.]

## ANNA SULLIVAN et al., Respondents, v. THE SEATTLE ELECTRIC COMPANY, Appellant.[1]

DEATH—CAUSE OF DEATH—EVIDENCE—RECORDS—CORONER'S INQUEST. The record of a coroner's report of an inquest is not competent evidence in civil actions of the cause of the death.

CARRIERS—NEGLIGENCE—SETTING DOWN PASSENGERS—EVIDENCE—ADMISSIBILITY. In an action for causing the death of an intoxicated passenger by permitting him to alight at a dangerous place, evidence offered by plaintiffs tending to show that the deceased was prevented by the carrier in his attempt to alight at a place where the streets were safe, is inadmissible.

SAME—EVIDENCE—OPINIONS. In an action for causing the death of an intoxicated passenger in permitting him to alight at a dangerous place, evidence that bystanders exclaimed that "it was murder" to allow him to get off there is inadmissible, as the same is only an expression of opinion.

SAME—EVIDENCE OF INTOXICATION. In such an action, evidence that the passenger was muddy and bloody about the face when he got on the car is admissible to show notice of his condition.

TRIAL—MISCONDUCT OF COUNSEL. Reading evidence introduced at a former trial in the argument to the jury is improper unless it was offered in evidence.

SAME. In an action for negligently causing the death of an intoxicated person, it is improper for counsel for the plaintiffs to comment to the jury upon the absence of evidence that the deceased was a drunkard.

SAME—PASSENGERS—INTOXICATION—DEGREE OF CARE—NOTICE OF CONDITIONS. It is error to instruct the jury to the effect that a street car company is bound to exercise reasonable care to ascertain the

[1]Reported in 97 Pac. 1109.

condition of a passenger as to sobriety, and to take precautions for his safety accordingly; as the carrier has a right to assume that he was sober until the contrary appears.

APPEAL—REVIEW—LAW OF CASE. The opinion of the supreme court on a former appeal is the law of the case.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered February 14, 1908, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for the death of a passenger permitted to alight from a street car at a dangerous place while in an intoxicated condition. Reversed.

*James B. Howe* and *R. G. Sharpe*, for appellant.

*John E. Humphries* and *George B. Cole*, for respondents.

RUDKIN, J.—This action was instituted by the widow and minor children of David Sullivan, deceased, to recover damages for his death, which is alleged to have been caused by the wrongful act or neglect of the defendant. The case was before this court on a former appeal where a full statement of the facts will be found. *Sullivan v. Seattle Elec. Co.*, 44 Wash. 53, 86 Pac. 786. On a retrial of the action, the plaintiffs had judgment for the sum of $3,000, and the defendant has appealed. In the course of the trial the respondents offered in evidence the report of the deputy coroner to the county auditor, made pursuant to § 6 of the act of March 7, 1891, Laws 1891, page 188, for the purpose of proving the cause of death. The appellant challenged the competency of this report, but its objection was overruled and this ruling is the first error assigned. It was formerly held that the record of a coroner's inquest on a dead body was competent but not conclusive evidence of the cause of death in all civil actions, because it was the result of an inquiry made under competent public authority to ascertain matters of public interest and concern. 1 Greenleaf, § 556. This rule still prevails in a few jurisdictions, but the great

weight of modern authority is against it. *Memphis & C. R. Co. v. Wormack,* 84 Ala. 149, 4 South. 618; *Germania Life Ins. Co. v. Ross-Lewin,* 24 Colo. 43, 51 Pac. 488, 65 Am. St. 215; *In re Dolbeer's Estate,* 149 Cal. 227, 86 Pac. 695; *Central R. Co. v. Moore,* 61 Ga. 151; *Union Cent. Life Ins. Co. v. Hollowell,* 14 Ind. App. 611, 43 N. E. 277; *Aetna Life Ins. Co. v. Kaiser,* 115 Ky. 539, 74 S. W. 203; *Wasey v. Travelers' Ins. Co.,* 126 Mich. 119, 85 N. W. 459; *State v. Cecil Co.,* 54 Md. 426; *Louis v. Connecticut Mut. Life Ins. Co.,* 58 App. Div. 137, 68 N. Y. S. 683; *Insurance Co. v. Schmidt,* 40 Ohio St. 112; *Cox v. Royal Tribe,* 42 Ore. 365, 71 Pac. 73, 95 Am. St. 752, 60 L. R. A. 620; *Aetna Life Ins. Co. v. Milward,* 118 Ky. 716, 82 S. W. 364, 68 L. R. A. 285; *Kane v. Supreme Tent, Knights of Maccabees,* 113 Mo. App. 104, 87 S. W. 547; *Boehme v. Sovereign Camp, Woodmen of the World,* 98 Texas 376, 84 S. W. 422; *Kinney v. Brotherhood of American Yoeman,* 15 N. D. 21, 106 N. W. 44; *Chambers v. Modern Woodmen of America,* 18 S. D. 173, 99 N. W. 1107; Wigmore Evidence, § 1671.

The rule excluding such records prevails indiscriminately in actions on insurance policies and in actions to recover damages for death by wrongful act, as will appear from an examination of the cases cited. The reason for the change in the rule is not far to seek.

"By the ancient law, such high credit was given to a coroner's inquest that the judge would not receive a verdict acquitting a person of the death of a man found against the accused by the coroner's inquest, unless the jury finding such acquittal also found what other person did the act, or by what other means the party came to his death. 2 Bac. Abr. Tit. 'Coroner.' This rule does not now obtain anywhere and the natural inquiry is, what remnants of it ought to remain? The inquiry into the cause of death cannot, under our law, in and of itself establish the status of any one or of any property . . . At the ancient common law when the jury found that a person had committed suicide, ignominious burial followed. To this extent the inquest established the status of the deceased, but, under our practice, nothing fol-

lows upon the verdict except in case it is found that a crime
has been committed.  Why, then, should a stranger to the
proceeding be bound by the verdict?  Why should it be evi-
dence against a stranger of the cause of his death?  We can-
not see any well grounded reason why such a verdict be either
conclusive or evidence against a stranger to the proceeding."
*Wasey v. Insurance Co., supra.*

The reasons for excluding this class of testimony are thus
stated by the court in *Germania Life Ins. Co. v. Ross-Lewin,
supra:*

"In case of death under suspicious circumstances, or result-
ing from accident, the rule permitting inquisitions to be used
in evidence would result in a race and scramble to secure a
favorable coroner's verdict, that would influence, and perhaps
control, in case suit should be instituted against life insurance
companies upon policies of insurance, and in cases of acci-
dents occurring as the result of negligence on the part of
corporations operating railways, street car lines, mining for
coal or the precious metals, etc.  Law writers, of late, have
frequently animadverted upon the carelessness with which
such inquests are frequently conducted, and to allow inquisi-
tions to be used in a suit between private parties upon a cause
of action growing out of the death of the deceased, as in
this case, would be to introduce an element of uncertainty
into the practice which, we think, would be contrary to public
policy, and pernicious in the extreme; and for this reason
we conclude, upon careful consideration, that the safer and
better rule is to exclude such inquisitions."

We have thus far considered the report of the coroner as
if it were entitled to the same degree of credit as the record
of an inquest, because the parties have so treated it, but in
our opinion the report does not stand on as high a plane as
the formal record.  It is simply a report made to the auditor
by the coroner as a part of the vital statistics of the state,
under the provisions of the act creating the state board of
health, and, as said by the court in *Sovereign Camp of W. O.
W. v. Grandon*, 64 Neb. 39, 89 N. W. 448:

"It is a mere police regulation, and is not intended for sup-
plying the public at large with information upon which re-

liance may be placed in the business affairs of the community. We do not think the record is of such a character as to entitle it to be received in evidence, as affecting the interest of a party to a litigation."

The respondents offered testimony tending to show that the deceased attempted to get off the car at a point where the streets were graded and level, but was restrained from so doing by the servants of the appellant. This testimony was admitted over objections, but the court afterwards charged the jury that they could only consider it in determining the condition of the deceased. Doubtless the entire conduct of the deceased while he was a passenger on the car might be given in evidence for the purpose of showing his condition and the knowledge that the appellant or its servants had of that condition, but the condition of the streets where the appellant first attempted to leave the car had no bearing upon that question. The jury might well infer from this testimony that the appellant was in the wrong in restraining the deceased from leaving the car at a safe and proper place, and how far this fact may have influenced or entered into the general verdict we do not know. The testimony bearing upon the character of the streets where the deceased attempted to leave the car should have been excluded.

Three witnesses called by the respondents were permitted to testify over objection, that at or about the time the deceased left the car, a woman passenger in the same car, got up or jumped up, and exclaimed, that "it was murder," or "looked like murder," to let the deceased off at that place. The appellant assails the ruling of the court in admitting this testimony on three grounds: first, because the exclamation was not made at the time the deceased left the car; second, because the exclamation was made by a passenger or bystander in no way connected with the principal transaction; and third, because the exclamation was a mere expression of opinion. We will pass over the first two grounds of objection as they are not necessarily involved in this case, and so far as we are at present

advised, will not arise on a retrial. Assuming without decid-
ing that exclamations of a mere bystander, in no manner
connected with the principal transaction, are admissible in
evidence, yet such exclamations must relate to matters of fact
which the party might properly testify to if called as a wit-
ness, and not to mere matters of opinion. To hold otherwise
would place exclamations above sworn testimony. If the ex-
clamation in question related to the principal transaction at
all, it was nothing more than the expression of an opinion
on the part of this woman that if a person in the condition
of the deceased were permitted to get off the car at that
point he would meet his death. It must be perfectly apparent
to any one that if called as a witness this woman could give
expression to no such opinion, and if her opinion found its
way into the records inadvertently it would be forthwith
stricken. *Hughes' Adm'r. v. Louisville & N. R. Co.*, 104 Ky.
774, 48 S. W. 671; *Allen v. State*, 111 Ala. 80; *State v.
Ramsey*, 48 La. Ann. 1407, 20 South. 904; *Kaelin v. Com-
monwealth*, 84 Ky. 354, 1 S. W. 594; *De Walt v. Houston
etc. R. Co.*, 22 Tex. Civ. App. 403, 55 S. W. 534.

One of the witnesses for the respondents was permitted to
testify over objection that when the deceased got on the car
he was all muddy and bloody about the face. We think this
testimony had some tendency to show the condition of the de-
ceased and to attract the attention of the servants of the
appellant to his condition, and that the testimony was proper
for that purpose.

It is next objected that counsel for the respondents was
permitted to read portions of the testimony taken at another
trial in his argument to the jury. Of course, it would be im-
proper to permit such testimony to be read unless it was also
offered at the second trial, but the question will not arise
again and we will not further discuss or consider it. In his
closing argument to the jury counsel for the respondent
further said concerning the deceased: "He was a man of
good habits gentlemen. If he had not been, they would have

raked this land over with a fine tooth comb to show this man was a drunkard." The general character of the deceased was not an issue in the case; it would not have been competent for the appellant to offer proof of his general character for sobriety, and counsel should not have been permitted to refer to the absence of such testimony in argument.

The following instruction to the jury was duly excepted to, and the giving of the instruction is assigned as error:

"If you find from the evidence that the said David Sullivan was in such a state of intoxication as to be unable to care for himself and that the servants of the defendant in charge of the car upon which he was a passenger knew that he was in such condition, *or by the exercise of reasonable care, that is, such care as a reasonably prudent person, engaged in like occupation would ordinarily exercise under similar circumstances to ascertain the condition of a passenger, should have known that he was in such an intoxicated condition as to be unable to care for himself*, then it was the duty of the servant of the defendant company operating said car to take such precaution for his safety as his condition required under all the surrounding circumstances."

This instruction is erroneous. A conductor has a right to presume that every passenger entering his car is both sane and sober until he has actual notice to the contrary. He is not compelled to make a mental or physical examination to ascertain his condition, and the doctrine of imputed or implied notice has no application to such a case.

"If a passenger voluntarily becomes intoxicated, the law does not impose the duty on the common carrier to place a guard over such passenger to prevent him from injuring himself in a place of danger. If a passenger, however, while in such condition as averred, does place himself in a place of peril, then before the company can be held liable if an injury results therefrom it must be proven that the agents or servants operating the train knew that fact—not that they should have known it because of any duty by law imposed on the company to watch such passenger—but the actual fact of such perilous position must be brought home to

the knowledge of the servants operating such train. The company was not bound to have its servants at the rear platform of the coach on which Carr was sitting at Mulkeytown for the reason that it owed him no such duty, as he had not indicated any intention of alighting there, and in fact he did not intend to do so." *St. Louis etc. R. Co. v. Carr*, 47 Ill. App. 353.

"We think, however, if a passenger is in need of special assistance, either from sickness or other misfortune, and this fact is known to the employees of the carrier, it is their duty to render it; but they are not required to anticipate such wants or needs. The trial court therefore erred by inserting into the instructions given to the jury the idea that it was incumbent upon the employees of the appellant to observe the condition of the passengers in order to see whether or not they needed assistance. This thought is embraced in the use of the expression 'or was apparent' in the instructions after stating the duty of the employees of appellant if appellee's health was known to them. As said before, if the employees of the railroad knew that the appellee was in feeble health, and needed assistance, it was their duty to render her such reasonable help as lay in their power in order that she might alight from the car in safety. But they owed her no duty of observation to ascertain her condition, and therefore the expression 'or was apparent' should have been omitted." *Illinois Cent. R. Co. v. Cruse*, 29 Ky. Law 914, 96 S. W. 821.
See also, *Strand v. Chicago etc. R. Co.*, 67 Mich. 380, 34 N. W. 712.

Other errors are assigned in the giving and refusing of instructions, but we think these questions are fully covered by our former opinion. As there stated, the issues in this case are, first, was the deceased intoxicated; second, did the servants of the appellant have actual notice of his condition; third, was the place where the deceased was permitted to alight from the car a reasonably safe place to land a person in his condition; and fourth, was the act of the appellant or its servants in suffering and permitting the deceased to leave the car at that particular time and place and in his then condition the natural and approximate cause of his death. If the jury

should find all of these issues in favor of the respondents they would be entitled to a verdict, and the mere fact that the deceased fell into the lake from the platform or trestle by reason of his intoxication—if he did so fall—would not of itself preclude a recovery, as the appellant was bound to anticipate such negligence on his part. Such we believe to be the law as laid down in the former opinion, and that opinion is the law of this case.

The judgment of the court below is reversed, and the cause is remanded for a new trial.

FULLERTON, DUNBAR, CROW, and MOUNT, JJ., concur.