[No. 34194.   Department One.   October 24, 1957.]

CHARLES PETERSON *et al.*, *Respondents*, v. THE CITY OF SEATTLE, *Appellant*.[1]

[1]Reported in 316 P. (2d) 904.

*A. C. Van Soelen, C. C. McCullough*, and *John P. Harris*, for appellant.

*Leon L. Wolfstone* and *Barbara Ohnick*, for respondents.

FINLEY, J.—This is an action to recover damages for personal injuries sustained by respondent wife when she slipped and fell on a snow-covered street, after debarking from a passenger bus operated by appellant city. Hereinafter any reference to respondent will mean respondent wife.

In the evening on March 3, 1955, respondent boarded a bus near her residence to go downtown to a meeting. Earlier that afternoon it had snowed in parts of Seattle, including the area in which respondent lived.

The bus made a stop at its regular place at the intersection of California avenue and Brandon street. It then proceeded north on California avenue. After traveling a very short distance, the rear wheels of the bus began to slip sideways toward the right-hand curb. The driver feared the bus might slide into the cars parked at the curb; he stopped the bus, set the brakes, and placed blocks under the real wheels. At this spot California avenue is a six-lane street, with two parking lanes and four traffic lanes. The bus stopped with its left front end near the center line and its right rear very close to a parked car.

There were six to eight passengers on the bus. There is evidence that the driver said to them: "This is it," or "This is as far as I can go." The driver helped one man alight from the bus.

Respondent and a "heavyset" older lady were the last two passengers to leave the bus. They got off at the front door as had the others. Respondent testified that the other lady preceded her down the steps, but that she followed closely so as to try and steady the other lady as she descended the steps. Upon alighting from the bus, respondent noted that in order to reach the sidewalk she would have to go around

a car which was parked between the bus door and the curb; it seemed shorter to go around in front of the car, so respondent started in that direction. The other lady was beside respondent on her right; respondent presumed that they were heading for the same sidewalk. However, when they had taken two or three steps and reached the front of the bus, the other lady passed in front of respondent in order to cross to the opposite side of the street. Respondent took one step back, to let her pass. Being concerned about the older lady's ability to cross the street, respondent turned her head to watch her. Suddenly, respondent's feet went out from under her; she fell to the street.

An unknown gentleman assisted respondent and helped her across the street. She then reported the fall to the driver. The driver did not see respondent alight from the bus, nor did he witness the fall. Respondent was taken to a doctor's office a few doors away. She had sustained a fracture of the right arm and a twisting and wrenching of the back and spine. At the time of the accident, respondent was fifty-nine years of age. She carried a cane because she suffered from multiple sclerosis and a nondisabling and nonpainful form of arthritis. After her fall, respondent filed a claim for damages with the city of Seattle. Later, no settlement having been made, she filed this suit. Upon trial by jury, respondent received a verdict of five thousand dollars. The city of Seattle has appealed.

Appellant urges six assignments of error. The principle contention is that the passenger-carrier relationship terminated when respondent set both feet on the street. No specific instruction to the jury was given by the trial court *as to the duration* of the passenger-carrier relationship. A review of the instructions indicates that the trial court assumed the relationship of passenger-carrier existed at the time of the accident.

The question of the duration of one's passenger status upon debarkation from a carrier under other than normal circumstances is one of first impression in this jurisdiction.

However, this question has been considered in other juris-dictions.

In *Texas, New Mexico & Oklahoma Coaches v. Williams* (1945), Tex. Civ. App., 191 S. W. (2d) 66, the court faced the problem upon the following facts: Plaintiff was a pas-senger on one of defendant's busses on a misty, foggy morn-ing. The bus made a station stop by pulling over to the left curb of a two-way street; plaintiff was discharged on the right side into the street. His checked baggage, consisting of four suitcases, was also placed in the street, and the bus de-parted. While plaintiff was attempting to move his suit-cases to the sidewalk, a car struck him. By this time, the bus was over a block away. In its opinion, the court stated:

"The authorities, we think, fairly establish the rule that bus carriers are under the duty to discharge their passengers into a safe place and when so discharged, the relationship is terminated and if discharged in an unsafe place, the rela-tionship is terminated when the passenger, in the exercise of ordinary care for his own safety, has had a reasonable opportunity to reach a place of safety."

The court decided that under the existing facts the passen-ger-carrier relationship had not terminated prior to the ac-cident.

In *German v. Muskingum Valley Transit Co.* (Ohio Com. Pl.), 94 N. E. (2d) 52, the court decided that the passenger-carrier relationship had not terminated though plaintiff was struck by a car one-fourth to one-half mile from the point of debarkation from the bus. The facts indicated that the bus had carried the passenger past her destination; that she was discharged in the darkness along a busy highway, forcing her to walk back along the highway to her destination; that as she was walking along the berm of the road, facing traffic, she was struck by a passing vehicle.

In the instant case, the bus had stopped under semi-emer-gency conditions when it skidded sideways on a slippery, snow-covered street. There is sufficient evidence to sub-stantiate a finding that the driver, impliedly if not expressly, invited the passengers to leave the bus; indeed, he testified that he helped one man alight from the bus. Since the front

end of the bus was near the center of a four-lane street, the passengers had to cross at least one slippery traffic lane in order to reach the sidewalk.

The rule in this state is that the carrier must exercise the highest degree of care consistent with the practical operation of its busses to safeguard passengers from injuries. *Wiggins v. North Coast Transp. Co.*, 2 Wn. (2d) 446, 98 P. (2d) 675; *Johnson v. Seattle Electric Co.*, 35 Wash. 382, 77 Pac. 677. We believe that under the circumstances of the instant case it would not have hindered the practical operation of bus service for the driver to have stood by the door and rendered such assistance as the passengers needed as they departed from the bus, helping those passengers who needed assistance across the slippery traffic lane to the sidewalk. It is therefore our opinion that the trial court properly instructed the jury, and that the appellant was not prejudiced by the instructions *as to its duties* under the carrier-passenger relationship, and that there is no merit in the appellant's contention that the relationship had terminated as a matter of law when respondent set both feet on the street.

Appellant vigorously contends that respondent had detoured from the direct path to the sidewalk; that by so doing, she had terminated the carrier-passenger relationship. There is a conflict in testimony on that point, precluding a ruling as a matter of law. In *Hiscock v. Phinney*, 81 Wash. 117, 142 Pac. 461, this court said:

"If a party desires to have the instructions adapted to a particular view of the case or to meet a situation which he conceives ought to be covered, it is his duty to specially request them, and in the absence of such a request, a mere omission upon the part of the court to instruct is not error."

Appellant did not request an instruction concerning termination of the passenger-carrier relationship by reason of respondent's alleged detour. We find no merit in this contention of appellant.

Appellant further contends that the evidence does not substantiate a finding of negligence on its part. As in-

dicated previously, the rule in this state requires the carrier to exercise the highest degree of care consistent with the practical operation of its busses to safeguard passengers from injuries. If there is any evidence tending to show that the carrier failed to comply with the required standard of care, then the question of negligence must be left to the jury. We think that the care which is exercised must be proportionate to the degree of danger inherent in the particular circumstances.

■ Certainly, the exercise of such care in this case is quite doubtful, since the driver himself testified that he did not even see the passengers leave the bus (except for the one he helped), much less aid them. We are convinced that the question of appellant's negligence was properly submitted to the jury; cf. *Oklahoma R. Co. v. Wilson*, 204 Okla. 488, 231 P. (2d) 688.

■ Similarly, under the facts of this case, the question of respondent's contributory negligence, if any, was properly a question of fact for the jury. *Becker v. Tacoma Transit Co.*, 50 Wn. (2d) 688, 314 P. (2d) 638.

Certain language in some of the instructions, as appellant has emphasized, could have been more appropriately chosen, but, considering the instructions as a whole, we find no prejudicial error.

The judgment of the trial court is affirmed.

HILL, C. J., MALLERY, OTT, and FOSTER, JJ., concur.