[No. 24689-5-I.   Division One.   January 14, 1991.]

CHAD R. HOUCK, *Appellant,* v. THE UNIVERSITY OF WASHINGTON, *Respondent.*

*Warren L. Dewar* and *Burns Schneiderman & Dewar, P.S.,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Andrew G. Cooley, Assistant,* for respondent.

BAKER, J.—This case raises the questions of whether a university has a duty to control drinking of alcoholic beverages in student dormitory rooms, and whether actual knowledge of a student's intoxication in an automated dormitory elevator is required to apply the common carrier standard of care. We reverse judgment entered on a verdict in favor of the defendant University of Washington.

Chad Houck was an 18–year–old first term freshman at the University of Washington. He attended a drinking party at his University of Washington dormitory, Haggett Hall, in December 1985. The party was held in a student room. It is disputed whether there was drinking in the hallway. Houck consumed alcohol and became intoxicated. He knew that under state law it was illegal for persons under the age of 21 to drink.

Houck and his companions left the party and entered an elevator to go down to a dance in the dormitory's lower level. One of the students stopped the elevator between floors by prying open the elevator doors as a prank. Each of the students jumped from the stalled elevator to the next lower floor level. After he jumped, Houck lost his balance and fell into the elevator shaft, falling over 50 feet. He was seriously injured.

Students in the University of Washington residence halls are provided with written informational materials. The 1985–86 publication, "The Residence Halls", stated in the basic rules section:

> *City, State and Other Laws:* You are expected to observe all city and state laws.

*Alcohol*: In Washington State it is against the law for anyone under 21 to drink alcohol. It is also illegal to buy or sell alcohol in the halls. If you are 21 years or older, you can drink in resident rooms or clusters with the door closed, but in no other parts of the building. The intent of this policy is to allow individuals to drink, but to discourage large parties. Kegs, keggers or cocktail parties are not permitted.

Houck acknowledged receiving information to that effect. The dormitory staff understood that basic privacy rights prevented them from making uninvited entry into student rooms to look for illegal drinking. However, if alcohol was seen in a public area, the staff would write up the offender in an incident report. The staff could not search closed bags for alcohol. Several students testified they understood that drinking alcohol in their rooms was permitted, even if they were under 21. One handwritten policy statement by dormitory staff noted, "[w]hether or not you drink is your own business[;] however you should be aware that consumption of alcohol in public places . . . is prohibited by Washington State law."

Regarding the safety of the elevator, Houck's elevator expert conceded that there was no mechanical defect that caused the elevator to stop the night of the accident. There was an adequate alarm bell and no reason for the students to evacuate the elevator. The expert stated that if the students had remained in the elevator, the doors which had been pried open probably would have closed, allowing the car to descend safely.

The expert witness also testified concerning two safety features that could have prevented the accident—a door restrictor and a toe guard. Although not required on this elevator, which was installed in 1963, door restrictors have been required on all United States elevators installed since 1981, according to the witness. A door restrictor prevents persons in an elevator stuck between floors from opening the doors more than 4 inches and leaving the car. Opposed by many fire fighters, the door restrictors continue to be controversial in the industry, the witness acknowledged.

The toe guard, a plate located under the elevator car and in the same plane as the car's front doors, is used to prevent a person in the hall from putting a foot under the car when the hallway doors have opened prematurely and the car is still descending. If the car is above the floor and the hall doors are open, such a toe guard would create a partial barrier to anyone getting under the elevator car and falling into the shaft, as occurred here. The evidence was conflicting whether there was a toe guard on the elevator the night of this accident.

A University elevator staff member indicated he was aware that the students were preopening the elevators and stopping them between floors. The staff denied awareness of the students jumping out.

The jury rendered a verdict for the University. After a motion for a new trial was denied, Houck filed a timely appeal.

## I

Houck contends that the court erred in instructing the jury that a common carrier who is not otherwise negligent has no duty to protect intoxicated passengers from damages caused by their intoxication unless the common carrier has actual knowledge of their intoxication and their danger.[1]

We review the sufficiency of instructions to test if they permit each party to argue his theory of the case, are

---

[1]Instruction 13 provided:

"At the time of the occurrence in question, the defendant University of Washington was a common carrier with respect to the condition of the elevator and only in this respect.

"A common carrier has a duty to its passengers to use the highest degree of care consistent with the practical use of its elevators and its business as a common carrier by elevator.

"However, a common carrier is not a guarantor of the safety of its passengers and, with respect to intoxicated passengers, a common carrier who is not otherwise negligent has no duty to protect them from damages proximately caused by thier [sic] own intoxication unless the common carrier has actual knowledge of the passenger's intoxication and actual knowledge that the passenger has placed himself in a position of danger.

"Any failure of a common carrier to use such care is negligence."

not misleading, and as a whole properly inform the jury of the applicable law. *Farm Crop Energy v. Old Nat'l Bank,* 109 Wn.2d 923, 933, 750 P.2d 231 (1988).

It is not disputed that the University was a common carrier in regard to the operation of the elevator in question. A common carrier owes the highest degree of care toward its passengers commensurate with the practical operation of its conveyance at the time and place in question. *See, e.g., Benjamin v. Seattle,* 74 Wn.2d 832, 447 P.2d 172 (1968).

In *Brown v. The Crescent Stores, Inc.,* 54 Wn. App. 861, 869, 776 P.2d 705 (1989),[2] the court dealt with the common carrier duty owed to infirm passengers and found that the "facts raise a question whether The Crescent should have reasonably anticipated an accident might occur and was therefore obligated to take precautionary measures." Brown, a 90–year–old woman, was attending a regularly scheduled Widows of World War I luncheon. She was injured when a door in an automatic elevator allegedly shot out with great force and struck her. Brown presented evidence of prior automatic elevator accidents involving elderly passengers, and the store had manually operated elevators available. The court noted that the store's duty "was commensurate with its passenger's age, size and physical condition of which it had knowledge." *Brown,* 54 Wn. App. at 868.

The *Brown* court relied on two earlier cases: *Benjamin v. Seattle,* 74 Wn.2d 832, 834–35, 447 P.2d 172 (1968) and *Sullivan v. Seattle Elec. Co.,* 44 Wash. 53, 61, 86 P. 786 (1906). The *Benjamin* court held that the question of negligence was properly for the jury to determine whether a trolley car operator was negligent in not warning and not assisting an elderly passenger who was injured when she had to step from the trolley onto the street rather than onto the curb. *See Boyd v. Edmonds,* 64 Wn.2d 94, 97, 390 P.2d 706 (1964).

---

[2]This case was published after the judgment in the instant case.

In *Sullivan,* the Supreme Court reversed a jury verdict for the defendant street railway company because the trial court's instructions denied the jury the opportunity "to determine from the entire evidence showing the defendant's condition, whether it was negligence to leave him at the place he was left by the respondents." *Sullivan,* 44 Wash. at 61. Sullivan was intoxicated when he boarded a streetcar in the evening. The conductor realized he was intoxicated and tried to restrain his leaving, but Sullivan became enraged and the conductor let him go. He drowned in the lake directly below the platform where he was discharged. *Sullivan,* 44 Wash. at 57.

The Supreme Court stated:

> The rule is that a carrier owes to a passenger a duty commensurate with his condition. After it receives a passenger who is helpless or incapacitated it must exercise towards him that degree of care necessary to keep him from harm . . . whether the carrier exercised this degree of care towards the deceased was a question for the jury, and the court erred in taking it from them.

*Sullivan,* 44 Wash. at 61.

Following a new trial, the Supreme Court again dealt with the *Sullivan* case on appeal. *Sullivan v. Seattle Elec. Co.,* 51 Wash. 71, 77–78, 97 P. 1109 (1908).[3] The court emphasized that the railway company did not owe a passenger in need of assistance any duty of continuous observation, although once the company had actual knowledge of a condition of need, it was the company's duty to provide the care required.

Here, the trial court erroneously relied on *Torres v. Salty Sea Days,* 36 Wn. App. 668, 676 P.2d 512, *review denied,* 101 Wn.2d 1008 (1984) to instruct the jury that the University of Washington must have actual knowledge of a passenger's intoxication to be found negligent as a result of injuries caused by the passenger's own intoxication. *Torres*

---

[3]The 1908 court acknowledged the previous Supreme Court opinion as the law of the case. A third case, published in 1909, also dealt with these facts. *Bennett v. Seattle Elec. Co.,* 56 Wash. 407, 105 P. 825 (1909).

is distinguishable from the instant case. In *Torres,* an intoxicated minor who had purchased alcohol on a ferry was injured in a 1–car accident after she left the ferry. Her car had not been on the ferry, and her status as a passenger had terminated before the point of injury. The *Torres* court relied on *Welsh v. Spokane & I.E.R.R.,* 91 Wash. 260, 265, 157 P. 679 (1916) (no duty for railroad to make observation of apparently capable passenger; duty of care terminates when he is discharged safely in a safe place). Here, the trial court correctly determined that Houck's passenger status continued to the point where he fell after jumping from the elevator. Thus, the common carrier duty continued for Houck, but not for Torres.

This case is also distinguishable from the second *Sullivan* case. *Sullivan v. Seattle Elec. Co.,* 51 Wash. 71, 97 P. 1109 (1908) (no duty to watch over an incapacitated passenger to prevent exposure to peril). Here, as in *Brown,* the common carrier provided service for a group of passengers with obvious special needs of which it had notice over a period of time. The University was aware of underage student drinking in the dormitory and was aware that students were stopping the elevators between floors. In *Brown,* the store was aware of the frailty of a group of elderly women and was aware of other elevator accidents involving elderly persons. As in *Brown,* this case raises a question of fact as to whether the common carrier was negligent in failing to respond to this knowledge.

An analogy may be drawn to common carrier cases involving escalators. In *Dabroe v. Rhodes Co.,* 64 Wn.2d 431, 434–35, 392 P.2d 317 (1964), the court held it was error not to have given the plaintiff's instruction that the store had a duty to use the highest degree of care consistent with the practical operation of its escalator

to protect its passengers from the danger of injury from malfunctions or defects of which they [the defendants] knew or should have anticipated from facts and circumstances known to them."

Not to have given this instruction prevented Dabroe from arguing her theory of the case—that the store knew that children's rubber shoes got caught in the escalators and that the store failed to install microswitches that would have brought the escalator to a sliding stop when rubber' shoes got caught and would have prevented Dabroe's injuries.

In *Ward v. J.C. Penney Co.*, 67 Wn.2d 858, 862, 410 P.2d 614 (1966), a 5–year–old boy was injured while playing on an escalator. The court cited with approval the trial court's instruction which "highlights the very field of danger within which the injury occurred." The instruction stated:

> In exercising its duty as a common carrier in the operation of its escalators, the defendant was bound by law to have known the normal characteristics of children, including their childish propensities.

*Ward,* 67 Wn.2d at 862.

While the passengers involved in the instant case were adults, the University's knowledge of the preopening of the elevator doors and student drinking raises a question of fact as to whether the University was negligent in failing to act on that knowledge. In another common carrier case involving a bus passenger, *Peterson v. Seattle,* 51 Wn.2d 187, 316 P.2d 904 (1957), Peterson fell and was injured when she exited from a bus stalled on a snowy street. The court stated:

> If there is any evidence tending to show that the carrier failed to comply with the required standard of care, then the question of negligence must be left to the jury. We think that the care which is exercised must be proportionate to the degree of danger inherent in the particular circumstances.

*Peterson v. Seattle,* 51 Wn.2d at 192.

In the instant case, the court's instruction 13 essentially removed the question of negligence from the jury by instructing it that the common carrier had no duty to protect intoxicated passengers from damages caused by their own intoxication without actual knowledge of the intoxication. While such an actual knowledge requirement may be

understandable in a situation involving attended common carrier facilities, it cannot apply to unattended, self-service facilities. Under the facts of this case, instruction 13 was tantamount to a directed verdict for the defense. There was no dispute that Houck was intoxicated. The instruction told the jury that if it found Houck was intoxicated, and that his intoxication contributed to the cause of his injuries, he could not recover unless the University had actual knowledge of his intoxication and his peril. This placed an impossible burden of proof on Houck—one which the law does not require. Accordingly, we reverse.

## II

Because our reversal may lead to a new trial, we deal with other issues for the court's guidance, as necessary. Houck contends that the University has a statutory and common law duty to control, (*i.e.,* prevent) underage drinking in student dormitories and that the court erred in instructing the jury to the contrary.[4]

Washington State law prohibits persons under 21 years of age from consuming alcohol. The same statute provides that no person shall permit any person under 21 from consuming liquor on his premises or premises *under his control.* RCW 66.44.270. The Washington Supreme Court in *State v. Chrisman,* 100 Wn.2d 814, 822, 676 P.2d 419 (1984) dealt with warrantless entry by a police officer into a student dormitory room following the student's arrest for possession of alcohol as a minor (a misdemeanor). The

---

[4]Instruction 18 provided:

"Under the facts of this case the defendant University of Washington had no duty to prevent students from consuming alcoholic beverages and you may not find against the University of Washington on the basis that it did not prevent students from consuming alcoholic beverages.

"Under the facts of this case Haggett Hall staff could not legally search students' closed baggage such as book or gym bags.

"You may consider what the University knew or in the exercise of ordinary care should have known about student alcohol consumption in the dormitory for the sole purpose of determining the negligence, if any, of the University in the maintenance and operation of elevators at Haggett Hall."

court held the entry was unconstitutional under Const. art. 1, § 7

because the officer was not presented with facts sufficient to demonstrate (1) a threat to the officer's safety, or (2) the possibility of destruction of evidence of the misdemeanor charged, or (3) a strong likelihood of escape.

*Chrisman,* 100 Wn.2d at 821. There was therefore "no compelling need to enter a private residence." *Chrisman,* 100 Wn.2d at 822.

█ Here, the University advised dormitory residents that they were expected to obey state laws, that state law prohibited anyone under 21 from drinking alcohol, and that students 21 or older could drink in residential rooms with the doors closed. Under *Chrisman,* the residential rooms were considered private residences, which were protected by the state constitution from warrantless intrusions unless there was some compelling need shown. *Chrisman,* 100 Wn.2d at 822.

██ Not only were the dormitory rooms not premises under the control of the University, but the failure of the University to prevent consumption of alcohol does not fit within the statutory meaning of "[to] permit" in RCW 66.44.270. "Permit" in this statute "refers to something more than a mere indifference or passive sufferance, and requires an affirmative assent." *Hostetler v. Ward,* 41 Wn. App. 343, 353, 704 P.2d 1193 (1985), *review denied,* 106 Wn.2d 1004 (1986). Thus, the University had no statutory duty to prevent students from drinking alcohol and the court properly refused plaintiff's proposed instructions 11 and 12.[5]

---

[5]Plaintiff's proposed instruction 11 provided:

"The violation, if you find any, of a statute or regulation is negligence as a matter of law. Such negligence has the same effect as any other act of negligence."

Plaintiff's proposed instruction 12 provided:

"A statute provides that no person shall permit any person under the age of 21 years to consume liquor on his premises or on any premises under his control. The same statute also provides that it is unlawful for any person under the age of 21 years to consume any liquor."

Similarly, Washington case law indicates the University breached no common law duty to prevent the students from consuming alcoholic beverages. In *Rhea v. Grandview Sch. Dist. JT 116–200,* 39 Wn. App. 557, 694 P.2d 666 (1985), high school seniors consumed alcohol at a nonschool sponsored party. The plaintiff's daughter was killed in an accident after she left the party. The court said that mere knowledge by school officials did not bring the party within the district's authority and responsibility. *Rhea,* 36 Wn. App. at 561.

As in *Rhea,* the party attended by Houck was not school sponsored. Although there was general knowledge of drinking behind closed room doors, there was no evidence of specific knowledge by school officials of this party. General knowledge of drinking did not bring this party within the University's authority or responsibility. Thus, we conclude that the University had no common law duty to prevent students from drinking under the facts of this case and that the court's instruction to that effect was properly given.

## III

Houck further contends that the court erred by failing to give his proposed instructions concerning premises liability. Jury instructions are sufficient if they permit each party to argue his theory of the case, are not misleading, and, read as a whole, properly inform the jury of the applicable law. *Farm Crop Energy v. Old Nat'l Bank,* 109 Wn.2d 923, 933, 750 P.2d 231 (1988).

Houck explains in his brief that he excepted to the court's failure to give these instructions based upon the fear that the "jury may not conclude that the plaintiff was a beneficiary of the common carrier status and, thus, there would be no fall–back theory upon which to base liability".

Although the court rejected plaintiff's proposed common carrier instruction, the jury was instructed "[a]t the time of the occurrence in question, the defendant University of

Washington was a common carrier . . .". The jury was also instructed:

A person is a passenger of a common carrier if he or she is in the act of boarding, entering or riding upon or in the act of alighting from the carrier's conveyance with the actual or implied consent of the carrier. Also, one is a passenger while upon the carrier's premises for a reasonable time after having disembarked from the carrier's conveyance.

■ Nothing in the record suggests any cause for Houck's injuries other than his own intoxication and alleged failures to provide adequate safeguards on the elevator. Because plaintiff is entitled to have the jury instructed only on theories supported by the evidence, *Dabroe v. Rhodes. Co.*, 64 Wn.2d 431, 435, 392 P.2d 317 (1964), the trial court did not err in rejecting plaintiff's proposed premises liability instructions.

IV

Finally, Houck contends that the trial court erred in excluding testimony regarding elevators in a building other than Haggett Hall.

■ Evidentiary decisions are within the discretion of the trial court and will be reversed only for an abuse of discretion. *Caruso v. Local 690, Int'l Bhd. of Teamsters*, 107 Wn.2d 524, 535, 730 P.2d 1299, *cert. denied*, 484 U.S. 815 (1987). Evidence which is not relevant is not admissible. ER 402.

ER 401 defines relevant evidence as

evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Here, Houck's offer of proof dealt with the lack of toe guards in elevators in McCarty Hall, a dormitory different from Haggett Hall where the accident occurred. Because the offered testimony related neither to the place nor the

actual time of the accident, the trial court properly excluded the testimony.

The judgment is reversed.

WEBSTER, A.C.J., and BRITT, J. Pro Tem., concur.

Review denied at 116 Wn.2d 1028 (1991).